563 So.2d 278 (1990)
In the Matter of MARINE SHALE PROCESSORS, INC., Request for an Air Quality Variance.
No. CA 89 0928.
Court of Appeal of Louisiana, First Circuit.
March 15, 1990.
Joseph E. LeBlanc, Jr., New Orleans, for appellant Marine Shale Processors, Inc.
John Sheppard and William Ridlon, La. Dept. of Justice, Baton Rouge, for appellee La. Dept. of Environmental Quality.
Before EDWARDS, LANIER and FOIL, JJ.
FOIL, Judge.
We are asked to decide whether this court has appellate jurisdiction under La. *279 R.S. 30:2024 to hear this appeal, brought by Marine Shale Processors, Inc. (MSP), challenging the denial of its request for a variance by the Louisiana Department of Environmental Quality (DEQ). We hold that the denial of MSP's request for a variance from the air quality regulations was a "final decision or order" of DEQ, and therefore, this court has appellate jurisdiction to review the merits of that challenged action under La. R.S. 30:2024(C).

FACTS
The record reveals that MSP currently operates its facility under Permit Number 1036 M-1, issued by DEQ, as modified, on January 3, 1986. This permit governs the point source air emissions at MSP's facility. In April, 1988, DEQ requested that MSP submit an Emissions Inventory Questionnaire for all emission points at the facility. MSP complied, and identified point source emissions in the inventory that were not included under its present air permit. On October 7, 1988, MSP filed a Permit Modification Application with DEQ, requesting that DEQ include in its permit those point source emissions not covered, but listed on the inventory. MSP also requested a variance to continue operation of these point sources until a modified permit was granted. DEQ requested additional information before it could act on the request, which was supplied by MSP. On December 15, 1988, a public hearing was conducted by DEQ for the purpose of taking public comment on MSP's variance request.
By letter dated February 1, 1989, DEQ denied MSP's request for a variance, noting that 29 emission points required a variance to operate legally. As reasons for its denial, DEQ cited MSP's past poor performance in adhering to Louisiana's air quality regulations and in complying with DEQ directives. Additionally, DEQ found the request presented an unacceptable risk to persons in the vicinity of the facility. The following day, MSP requested a hearing with DEQ on the variance denial. DEQ refused to hold a hearing, stating it is not required by law to hold an adjudicatory hearing on a variance denial. MSP thereafter timely appealed DEQ's denial of its request for a variance to this court. In its motion for an appeal, MSP asserts that DEQ failed to follow the applicable statutes and regulations in denying its request for a variance. In response, DEQ filed this motion to dismiss the appeal, asserting this court lacks appellate jurisdiction to review its decision to deny a variance request.

MOTION TO DISMISS
In support of its motion to dismiss the appeal, DEQ argues this court has no appellate jurisdiction to decide the propriety of its denial of MSP's variance request under La.R.S. 30:2024. La.R.S. 30:2024, which regulates the jurisdiction of this court in certain environmental actions, provides as follows:

§ 2024. Finality of action; appeals
A. Any enforcement or permit action shall be effective upon issuance unless a later date is specified therein. Such action shall be final and shall not be subject to further review unless, no later than twenty days after the notice of the action is served by certified mail or by hand upon the respondent, he files with the secretary a request for hearing. Upon timely filing of the request, the secretary shall either grant the relief requested or forward the request to the court of appeal.
B. Notwithstanding the provisions of Subsection A of this Section, if the secretary finds that an emergency exists which requires that immediate action be taken, he shall issue such permits, variances, or other orders as necessary, which shall be effective immediately upon issuance, and any appeal or request for review shall not suspend the implementation of the action ordered.
C. Any person aggrieved by a final decision or order of the secretary may appeal therefrom to the Court of Appeal, First Circuit, if a motion for an appeal is filed with the secretary within thirty days after the final decision or order is served upon the respondent. Any preliminary, procedural, or intermediate ruling or decision by the secretary is subject *280 to the supervisory jurisdiction of the appellate court as provided by Article V, Section 10 of the Constitution of Louisiana. The Court of Appeal, First Circuit, shall promulgate rules of procedure to be followed in taking and lodging such appeals. The provisions of R.S. 49:962 and 964 shall not apply to decisions and orders of the secretary.
Essentially, DEQ contends that no appellate jurisdiction exists in this court under La. R.S. 30:2024(C), which grants appellate jurisdiction to "any person aggrieved by a final decision or order of the secretary" of DEQ on two bases. First, DEQ argues that appellate jurisdiction lies under La. R.S. 30:2024(C) in only two instances: (1) when the secretary issues a final order in a permit or enforcement action under La.R.S. 30:2024(A), or (2) when the secretary finds an emergency exists and grants a variance under La.R.S. 30:2024(B). DEQ argues that no appellate jurisdiction exists in this case under subsection (C) because no order in a permit or enforcement action has been issued by the secretary under subsection (A), and no emergency has been found to exist by the secretary under subsection (B).[1]
At the outset, we reject DEQ's attempt to limit the scope of this court's jurisdiction under R.S. 30:2024(C) to those cases falling under R.S. 30:2024(A) or (B). In Shreveport Sanitary & Industrial Landfill Standard Permit No. P-0120, 506 So.2d 803 (La.App. 1st Cir.1987), this court rejected a similar attempt to limit this court's jurisdiction under subsection (C) of this jurisdictional provision.[2] In Shreveport, it was argued that before an appeal could be entertained under subsection (C), the party seeking relief had to first request review before the secretary of DEQ under subsection (A). In rejecting this argument, this court stated that such a reading would render subsection (C) meaningless. Similarly, for this court to read subsection (C) as authorizing appellate jurisdiction in those cases where it already exists under either subsections (A) or (B) would be to render subsection (C) meaningless. It is clear that subsection (C) is an independent jurisdictional provision, and gives to any "aggrieved person" the right to appeal a "final decision or order of the secretary" to this court.
Secondly, DEQ asserts the denial of a variance is not a final order or decision of the secretary, but is merely an "interlocutory" order, falling under 30:2024(C)'s supervisory jurisdictional provision, which provides that "[a]ny preliminary, procedural, or intermediate ruling or decision" of the secretary of DEQ falls under this court's supervisory jurisdiction.
DEQ characterizes a variance as a "preliminary" or "interlocutory" step in the permit application process. In support of its argument that the refusal to grant a variance is not a final order or decision of the secretary, DEQ points to La.R.S. 30:2056, which provides, in pertinent part:

§ 2056. Variances
A. The secretary may grant individual variances beyond the limitations prescribed under this Chapter. Such variances may be granted upon presentation of adequate proof that compliance with any provision of this Chapter, with any rule or regulation thereunder, or with any final order or determination of the secretary will result in the practical closing and elimination of any lawful business, occupation, or activity without sufficient corresponding benefit or advantage to the people of the state.
Additionally, DEQ focuses on the definition of "decision or order" found in the Louisiana *281 Administrative Procedure Act. La. R.S. 49:951(3) defines a decision or order as the "whole or any part of the final disposition (whether affirmative, negative, injunctive or declaratory in form) of any agency".... DEQ argues, and the record shows, MSP's application for a modified permit is still pending before DEQ. Finally, DEQ asserts that there is no reason why a variance denial should be subject to appellate review, since by its very nature, a variance is merely permission not to comply with the law. DEQ concedes, however, that the grant of a variance by it would be subject to this court's appellate jurisdiction under La.R.S. 30:2024.
We agree, however, with MSP's position that the decision by DEQ not to grant a variance is a final order or decision. A variance is a special authorization to operate in violation of the law, and contemplates that the party obtaining the variance will make progress toward compliance with the air quality regulations. La.R.S. 30:2004(7). La.R.S. 30:2056 gives to the potential violator a legal remedy authorizing noncompliance with the air quality regulations for a limited period of time, and thereby relieves the violator from the penalties prescribed for noncompliance. Seen in this light, it is clear that La.R.S. 30:2056 creates a distinct legal right, and provides an independent legal remedy to persons subject to the air quality regulations.
Further, a decision as to whether or not to grant the request for a variance can only itself be made after DEQ makes a determination as to the merits of the request. The statutory scheme sets forth several inquiries DEQ is required to make in reaching a decision on a request for a variance. First, La. R.S. 30:2056(A) requires that DEQ employ a cost-benefit analysis in making its determination on a variance request. Thus, before DEQ can grant a variance, it must find that compliance with the regulations and laws of this state, or with any DEQ directive, will result in the "practical closing and elimination" of the business, without sufficient benefit to the people of this state. Further, La.R.S. 30:2014(A) mandates that in considering the granting or denial of a variance, "due consideration shall be given to the violation and compliance history of that facility." Clearly, under La.R.S. 30:2056 and La. R.S. 30:2014(A), the decision whether or not to grant a variance requires that DEQ make a determination as to the merits of the request. Indeed, in this case, DEQ made a determination as to the merits of MSP's request following a public hearing. DEQ based its decision to deny the request on the grounds of MSP's history of noncompliance, and found the variance would pose too serious a risk to those persons in the vicinity of the facility.
La.Code Civ.Pro. art. 1841 distinguishes between a "final" judgment and an "interlocutory" judgment. It defines a "final judgment" as one which determines the merits of the controversy, in whole or in part, while an "interlocutory judgment" is one which does not determine the merits of a case, but decides only preliminary matters in the course of an action. DEQ's decision on the merits of MSP's variance request is hardly an "interlocutory" one, as DEQ suggests.[3]
Unlike our state courts, the federal courts have extensively addressed the issue of what constitutes "final agency action" so as to trigger the availability of judicial review of administrative decisions under the Federal Administrative Procedure Act, 5 U.S.C.A. § 704. In determining whether an order of an administrative agency is sufficiently "final" for the purposes of judicial review, the federal courts employ a "common sense" approach. Dow Chemical, USA v. Consumer Product Safety *282 Commission, 459 F.Supp. 378 (W.D.La. 1978). The federal courts have considered the "touchstone" of finality to be the "imposition of an obligation, the denial of a right, or the fixing of a legal relationship." U.S. Department of Justice v. Federal Labor Relations Authority, 727 F.2d 481 (5th Cir.1984). In making this determination, the relevant considerations are whether the process of administrative decision making has reached a stage where judicial review will not disrupt the orderly process of adjudication and whether rights or obligations have been determined or legal consequences will flow from the agency action. Port of Boston Marine Terminal Assn v. Rederiaktiebolaget Transatlantic, 400 U.S. 62, 71, 91 S.Ct. 203, 209, 27 L.Ed.2d 203 (1970). In the instant case, in ruling MSP was not entitled to a variance, DEQ denied MSP a legal right to operate its point sources without being subject to penalties for noncompliance with the air quality regulations. This decision denied MSP a right, and is certainly one from which legal consequences flow. La. R.S. 30:2055 and 30:2057. Additionally, DEQ does not assert that judicial review of the variance denial will in any way disrupt its proceedings relative to the pending permit modification application. Because the request for a variance and a permit modification application are distinct legal remedies, the exercise of appellate jurisdiction should in no way interfere with DEQ's proceedings on the permit modification request.
Based on the foregoing, we conclude DEQ's denial of a request for a variance under La.R.S. 30:2056 is a "final order or decision" of DEQ, sufficient to invoke this court's appellate jurisdiction to review the merits of that decision under La.R.S. 30:2024(C). Accordingly, the motion to dismiss the appeal is denied.[4] All costs associated with this motion are taxed to DEQ.
MOTION DENIED.
NOTES
[1] DEQ argues at length that a denial of a request for a variance is not a "permit or enforcement" order so as to trigger this court's appellate jurisdiction under La.R.S. 30:2024(A), focusing on the manner in which the statutory scheme distinguishes between a permit and a variance. Because we hold the denial of a request for a variance is a final order or decision of the secretary of DEQ, thus subject to this court's appellate jurisdiction under La.R.S. 30:2024(C), we need not decide whether such action falls under subsection (A).
[2] Prior to its redesignation as La.R.S. 30:2024, the jurisdictional provision at issue was designated La.R.S. 30:1072. There has been no change in the statutory language as it appeared at the time the Shreveport case was decided.
[3] It is true that a request for a variance may "precede" the permit application process, and is, in this technical sense, "preliminary" to that process. However, DEQ's argument on the "preliminary nature" of the variance fails to recognize the nature of the variance as a distinct legal remedy, which affords relief to the potential violator who cannot immediately comply with the law. It is a remedy which is not dependent on the permit application process. Further, it is a remedy which requires a determination on the merits of the proposed variance. Therefore, although a request for a variance may accompany a permit modification request, a decision on the variance request is not interlocutory.
[4] In its brief, DEQ argues at length that MSP is not entitled to the relief it seeks. We believe these arguments refer to the merits of the challenged action, rather than the power of this court to hear this appeal under our appellate jurisdiction, which is the only issue in this motion. Therefore, these arguments will not be addressed by this court in ruling on the motion.