566 So.2d 994 (1990)
In the Matter of MARINE SHALE PROCESSORS, INC. Request for an Air Quality Variance.
No. CA 89 0928.
Court of Appeal of Louisiana, First Circuit.
June 26, 1990.
Writ Denied November 2, 1990.
*995 Joseph E. LeBlanc, Jr., New Orleans, for appellant Marine Shale Processors, Inc.
John Sheppard and William Ridlon, La. Dept. of Justice, Baton Rouge, for appellee La. Dept. of Environmental Quality.
Before EDWARDS, LANIER and FOIL, JJ.
LANIER, Judge.
This action is on appeal from an administrative proceeding in which the Louisiana Department of Environmental Quality (DEQ) denied the appellant's request for a variance from its point source air emissions permit. These proceedings commenced when appellant filed a written application with DEQ requesting modification of its existing point source air emissions permit and seeking a variance to continue operations until a modified permit could be granted. After a public hearing was held on the requested variance, an assistant secretary of DEQ denied the appellant's request for a variance. The appellant then requested an adjudicatory hearing on the denial of its variance which was denied by the secretary of DEQ. This appeal followed.

FACTS
The facts of this case were set forth in In the Matter of Marine Shale Processors, Inc., 563 So.2d 278 (La.App. 1st Cir.1990) as follows:
The record reveals that MSP [Marine Shale Processors, Inc.-appellant] currently operates its facility under Permit Number 1036 M-1, issued by DEQ, as modified, on January 3, 1986. This permit governs the point source air emissions at MSP's facility. In April, 1988, DEQ requested that MSP submit an Emissions Inventory Questionnaire for all emission points at the facility. MSP complied, and identified point source emissions in the inventory that were not included under its present air permit. On October 7, 1988, MSP filed a Permit Modification Application with DEQ, requesting that DEQ include in its permit those point source emissions not covered, but listed on the inventory. MSP also requested a variance to continue operation of these point sources until a modified permit was granted. DEQ requested additional information before it could act on the request, which was supplied by MSP. On December 15, 1988, a public hearing was conducted by DEQ for the purpose of taking public comment on MSP's variance request.
By letter dated February 1, 1989, DEQ denied MSP's request for a variance, noting that 29 emission points required a variance to operate legally. As reasons for its denial, DEQ cited MSP's past poor performance in adhering to Louisiana's air quality regulations and in complying with DEQ directives. Additionally, DEQ found the request presented an unacceptable risk to persons in the vicinity of the facility. The following day, MSP requested a hearing with DEQ on the variance denial. DEQ refused to hold a hearing, stating it is not required by law to hold an adjudicatory hearing on a variance denial. MSP thereafter timely appealed *996 DEQ's denial of its request for a variance to this court.

DENIAL OF VARIANCE

(Assignment of error number 1)
MSP contends the denial of its request for an air quality variance by DEQ is contrary to law and an abuse of discretion in that: (1) the variance denial is based, in part, on the contents of a July 29, 1986 compliance order, the provisions of which were suspended by its request for a hearing; (2) the variance denial is based, in part, on the contents of a December 27, 1985 compliance order which was never served on it[1]; and (3) its request for a variance was denied despite a clear showing by it that denial of the requested variance will result in the practical closing and/or elimination of a significant portion of its lawful business without corresponding benefit or advantage to the people of the State of Louisiana, contrary to the Louisiana Air Control Law and due process protections of the Louisiana and United States Constitutions.
La.R.S. 30:2057(A) provides as follows:
A. No person shall:
(1) Discharge air contaminants or noise pollution into the air of this state in violation of regulations of the secretary or the terms of any permit, license, or variance issued hereunder.
(2) Violate any rule or regulation adopted by the secretary under this Chapter.
A variance is a special authorization to operate in violation of the law or a permit, and contemplates that the party obtaining the variance will make progress toward compliance with the air quality regulations. La.R.S. 30:2004(7); In the Matter of Marine Shale Processors, Inc., 563 So.2d at 281. A variance gives the potential violator a legal remedy authorizing noncompliance with the air quality regulations for a limited period of time, and relieves the violator from the penalties prescribed for noncompliance. In the Matter of Marine Shale Processors, Inc., 563 So.2d at 281.
La.R.S. 30:2056(A) and (B) provide as follows:
A. The secretary may grant individual variances beyond the limitations prescribed under this Chapter. Such variances may be granted upon presentation of adequate proof that compliance with any provision of this Chapter, with any rule or regulation thereunder, or with any final order or determination of the secretary will result in the practical closing and elimination of any lawful business, occupation, or activity without sufficient corresponding benefit or advantage to the people of the state.
B. In determining under what conditions and to what extent a variance from this Chapter or rule or regulation hereunder may be granted, the secretary shall give due recognition to the progress which the person requesting such variance shall have made in controlling or preventing any condition which may have existed as defined by R.S. 30:2053(2). In such case the secretary shall grant such variance conditioned upon such person effecting a partial abatement over a period of time which it shall consider reasonable under the circumstances, or the secretary in conformity with the intent and purpose of this Chapter to protect health and property may prescribe other and different requirements with which the person who receives such variance shall comply. (Emphasis added)
Louisiana Administrative Code (LAC) 33:III.917 provides as follows:
A. Where, upon written application of the responsible person or persons, the administrative authority finds that by reason of exceptional circumstances strict conformity with any provisions of these regulations would cause undue hardship, would be unreasonable, impractical or not feasible under the circumstances, *997 the administrative authority may permit a variance from these regulations.
B. No variance may permit or authorize the maintenance of a nuisance, or a danger to public health or safety. (Emphasis added)
When used in the Revised Statutes or an air quality regulation, the word "shall" is mandatory, and the word "may" is permissive. La.R.S. 1:3; Succession of Holloway, 531 So.2d 431 (La.1988); Petitto v. McMichael, 552 So.2d 790 (La.App. 1st Cir. 1989); Johnson v. Southern University, 551 So.2d 1348 (La.App. 1st Cir.1988), writ denied, 553 So.2d 475 (La.1989). In this context, the word "may" denotes discretion. Johnson v. Southern University, 551 So.2d at 1362. Thus, DEQ has discretion to grant a variance or not, and its decision will not be set aside absent an abuse of discretion. In this procedural posture, an appellate court's function is not to weigh de novo the available evidence and to substitute its judgment for that of the agency. Save Ourselves, Inc. v. Louisiana Environmental Control Commission, 452 So.2d 1152 (La.1984). Compare Pardue v. Stephens, 558 So.2d 1149 (La. App. 1st Cir.1989).
The statutory scheme sets forth several inquiries DEQ is required to make in reaching a decision on a request for a variance. First, La.R.S. 30:2056(A) requires that DEQ employ a cost-benefit analysis in making its determination on a variance request. Thus, before DEQ can grant a variance, it must find that compliance with the regulations and laws of this state, or with any DEQ directive, will result in the "practical closing and elimination" of the business, without sufficient benefit to the people of this state. In the Matter of Marine Shale Processors, Inc., 563 So.2d at 281. Second, La.R.S. 30:2014(A)[2]mandates that in considering the granting or denial of a variance, "due consideration shall be given to the violation and compliance history of that facility." (Emphasis added). Further, LAC 33:III.917.B states that "no variance may permit or authorize the maintenance of a nuisance, or a danger to public health or safety."
DEQ is also mandated by La.R.S. 30:2014(A) to "act as the primary public trustee of the environment" and to "consider and follow the will and intent of the Louisiana Constitution and Louisiana statutory law in making any determination relative to the granting or denying of ... variances...." See also La. Const. art. IX § 1; Save Ourselves, Inc. v. Louisiana Environmental Control Commission, 452 So.2d at 1154-1157.
In denying MSP's request for a variance, the assistant secretary of DEQ stated the following:
In my letter of April 18, 1988, Marine Shale Processors, Inc. (MSP) was requested to submit within 90 days an Emissions Inventory Questionnaire, detailing all emission points at the facility. In a letter dated October 7, 1988, MSP requested a variance to continue operating unpermitted point sources that had been identified in their Emissions Inventory Questionnaire (EIQ) supplied on the *998 same date. Included with the variance request was an application to modify their existing permit, Number 1036 M-1, to include the unpermitted emission points. Subsequent review of the permit modification request confirmed that 29 emission points require a variance to operate.
A public hearing was held in Morgan City on December 15, 1988 to give the general public the opportunity of commenting on the variance request. Comments made at the hearings, as well as written submittals, were considered in making a decision on the variance. Other factors considered were the frequency and substance of complaints by residents in the general area, and the nature of the substances handled at the facility.
In a Compliance Order dated December 22, 1985, MSP was directed to submit to the Department of Environmental Quality (DEQ) a consolidated permit request that identified all emission points at the facility. MSP was formally notified of violations of Air Quality Regulations associated with emissions from unpermitted sources in a Compliance Order issued by (DEQ) on July 29, 1986. There is no evidence of MSP actions to attempt to obtain the necessary permit modification for those sources or to correct the operating conditions leading to violations of Air Quality Regulations for over two years following issuance of the Compliance Orders. This indicates disregard for the State's Air Quality Regulations and recalcitrance with respect to compliance with DEQ directives.
This Office is charged with promoting an environment free from pollution that jeopardizes the health and welfare of state residents. Obstructing or limiting plant operations is avoided whenever possible. However, after careful review of the history and current circumstances of operation of MSP, it is my opinion that continued operation involving certain of the unpermitted air emission sources represents an unacceptable risk to those working and residing in the vicinity of MSP facility. Therefore, the October 7, 1988 request for a variance to continue operations with the unpermitted emission sources is hereby denied. (Emphasis added)
MSP contends that DEQ erred in considering the December 27, 1985 and July 29, 1986 compliance orders as evidence of MSP's prior compliance history. La.R.S. 30:2014(A) requires DEQ to consider the violation and compliance history of MSP in considering the granting or denial of its variance request.
MSP argues that the December 27, 1985 compliance order was never served on it and is therefore of no effect. This argument need not be addressed because the record reveals that MSP and DEQ entered into a settlement agreement on January 3, 1986. This agreement resolved the issues contained in the December 27, 1985 compliance order and resulted in the modification of MSP's permit. The agreement states the following:
VIII.
This Agreement constitutes an agreed settlement and compromise of disputed claims. Neither this Agreement nor any part hereof shall constitute an admission of liability, fact, or evidence of such, nor any violation of any law or regulation, and this Agreement shall not be admitted as evidence of any admission or declaration against interest by the State or by MSP in any proceeding.
IX.
To the extent they conflict with any part of this Agreement, all previous orders, compliance orders and permits issued by the Department or its predecessors to MSP for this facility are superceded.
Pursuant to the agreement, the disputed claims dealing with the December 27, 1985 compliance order were resolved without admission of liability or violation of any law or regulation. The agreement superceded the December 27, 1985 compliance order. Since the December 27, 1985 compliance order was superceded, it is without effect and should not have been considered by *999 DEQ. DEQ was also bound by the agreement not to use the December 27, 1985 compliance order as evidence of violation of any law or regulation. Thus, DEQ erred in considering the December 27, 1985 compliance order as history of MSP's prior violations. However, as hereinafter indicated, this error was harmless.
MSP also argues that the July 29, 1986 compliance order's provisions were suspended by its request for hearing and could not be considered as history of MSP's prior noncompliance. La.R.S. 30:2024(A) provides as follows:
Any enforcement or permit action shall be effective upon issuance unless a later date is specified therein. Such action shall be final and shall not be subject to further review unless, no later than twenty days after the notice of the action is served by certified mail or by hand upon the respondent, he files with the secretary a request for hearing. Upon timely filing of the request, the secretary shall either grant the relief requested or forward the request to the court of appeal.
On July 31, 1986, MSP filed a request for hearing with DEQ. Thus, the effect of the compliance order was suspended. However, we feel that suspension of the effect of the July 29, 1986 compliance order does not preclude DEQ from considering it as part of MSP's compliance history. A variance allows a facility to operate in violation of the law or regulation, and thus, the granting of a variance request is of great consequence. Proceedings before DEQ are not controlled by the general rules of evidence prescribed for civil actions, and DEQ can consider any evidence having a bearing on the proceedings. The July 29, 1986 compliance order has bearing on the proceeding even though it was not effective. The record reveals independent evidence which supports the findings in the July 29, 1986 compliance order and, thus, due process has not been violated. This situation is analogous to a court considering prior arrests in sentencing a criminal defendant.
MSP also contends its request for a variance was denied despite a clear showing by it that denial of the requested variance will result in the practical closing and/or elimination of a significant portion of its lawful business without corresponding benefit to the people of Louisiana, contrary to the Louisiana Air Control Laws and due process protections of the Louisiana and United States Constitutions. La. R.S. 30:2056(A) states a variance may be granted upon presentation of adequate proof that compliance with any provision of the Air Control Law, with any regulation thereunder, or with any final order or determination of DEQ will result in the practical closing and elimination of any lawful business, occupation, or activity without sufficient corresponding benefit to the people of Louisiana. Thus, MSP has the burden of proving the cost of compliance outweighs the benefit to the public.
The record does not reveal that MSP's compliance with its present permit and the air quality regulations will result in the practical closing and/or elimination of any lawful business without benefit to the public. MSP could continue its operations in compliance with its present permit and still conduct substantial business. Also, the public will receive a substantial benefit by not being exposed to unpermitted air emissions from hazardous waste sources. LAC 33:III.917.B prohibits DEQ from granting a variance where there is a danger to public health or safety, as would be the case here. After a review of the record, we cannot say that DEQ abused its discretion in denying MSP's request for a variance.
MSP also asserts several due process arguments in support of its claim that DEQ erred in denying its request for a variance. MSP contends it was denied due process because DEQ was not a neutral decision maker. This court has held that the combination of investigative and adjudicative functions performed by DEQ does not violate due process. Office of Environmental Affairs v. McWhorter and Associates, Incorporated, 449 So.2d 1062 (La.App. 1st Cir.1984). There has been no showing of partiality by DEQ which would have denied MSP due process of law.
*1000 MSP also contends there should have been an adjudicatory hearing on the denial of the variance, and this lack of a hearing violates due process. What process is due depends upon the particular interest involved. In the Matter of Shreveport Sanitary and Industrial Landfill, 521 So.2d 710 (La.App. 1st Cir.1988); Bell v. Department of Health and Human Resources, 472 So.2d 235 (La.App. 1st Cir. 1985), aff'd, 483 So.2d 945 (La.1986). Due process is particularly flexible in the area of administrative law; it does not always necessitate a full blown trial. Bell v. Department of Health and Human Resources, 483 So.2d 945 (La.1986); Smith v. Division of Administration, Louisiana Information Processing Authority, 415 So.2d 381 (La.App. 1st Cir.1982). No one has a vested right to any particular procedure. Bell v. Department of Health and Human Resources, 472 So.2d at 238; Smith v. Division of Administration, Louisiana Information Processing Authority, 415 So.2d at 385. The record reflects that MSP was given notice and an opportunity to be heard. DEQ held a public hearing at which public comments were taken and some of MSP's employees made statements. MSP submitted written responses to some of the public comments made at the public hearing. MSP was allowed to submit all of its technical data in support of the variance. We believe that DEQ's exercise of discretion in holding a public hearing and denying MSP's request for an adjudicatory hearing constituted all the process that was due under the circumstances. See In the Matter of Shreveport Sanitary and Industrial Landfill, 521 So.2d at 713-714.
MSP also contends it was denied due process because the Louisiana Air Control Law and air quality regulations dealing with variances do not sufficiently set forth criteria by which requests for variances may be judged. The Louisiana Air Control Laws and air quality regulations provide detailed criteria by which variance requests can be reviewed. These rules provide ample notice to MSP of the standards against which its request for a variance could be judged.
MSP also contends that DEQ failed to provide it with detailed reasons for its decision and has precluded it from obtaining meaningful judicial review in violation of its due process rights. DEQ's reasons cited above provide sufficient reasons for its decision. Even assuming they lack sufficient detail, this court may uphold a decision of less than ideal clarity if DEQ's path may reasonably be discerned, such as when its findings, reasons and exercise of discretion are necessarily and clearly implied by the record. Save Ourselves v. Louisiana Environmental Control Commission, 452 So.2d at 1160; Blackett v. Louisiana Department of Environmental Quality, 506 So.2d 749 (La.App. 1st Cir.1987). While DEQ must articulate the basis for its decision, where the findings and reasons therefor are necessarily implicit in the record and the record readily yields substantial evidence to support its determination, its order is not invalid merely because of its failure to make explicit its finding which was self evident. Blackett v. Louisiana Department of Environmental Quality, 506 So.2d at 755. MSP was not denied meaningful judicial review in violation of its due process rights.
DEQ's denial of MSP's request for a variance was not contrary to law or an abuse of discretion.
This assignment of error is without merit.

DECREE
For the foregoing reasons, the ruling of the assistant secretary of DEQ which denied MSP's request for a variance is affirmed. MSP is cast for all costs of these proceedings.
AFFIRMED.
NOTES
[1] In MSP's brief, it assigns error to DEQ's consideration of a December 22, 1985 compliance order in denying its variance request. The record reveals that the compliance order was actually dated December 27, 1985.
[2] La.R.S. 30:2014(A) provides as follows:

A. All permits, licenses, registrations, variances, and compliance schedules authorized by this Subtitle shall be granted by the secretary. The power to grant or deny certain permits, licenses, registrations, variances, or compliance schedules may be delegated by the secretary to the assistant secretaries subject to his continuing oversight. However, prior to the grant of any permit, license, registration, variance, or compliance schedule to any facility, each assistant secretary shall submit a report describing the history of violations and compliance for that facility. In considering the granting or denial of the permit, license, registration, or variance, due consideration shall be given to the violation and compliance history of that facility. No permit, license, registration, variance, or compliance schedule shall be granted for the construction or modification of any facility to be used in shipping or receiving sulphur in the solid state in bulk quantities and from which sulphur particulate matter will be emitted. The secretary shall act as the primary public trustee of the environment, and shall consider and follow the will and intent of the Louisiana Constitution and Louisiana statutory law in making any determination relative to the granting or denying of permits, licenses, registrations, variances, or compliance schedules authorized by this Subtitle. (Emphasis added)