EDWARDS, Judge.
CECOS International, Inc., a hazardous waste treatment, storage, and disposal facility operator, appeals the decision of the secretary of the Department of Environmental Quality denying an application for a permit. We affirm.
In 1982, an application hearing was conducted by the Environmental Control Commission (ECC), the predecessor of the Department of Environmental Quality (DEQ). A permit was issued in 1983 to the applicant, Browning Ferris Industries Chemical Services, Inc. (BFI-CSI).[1] The operational permit was transferred to CECOS International, Inc. (CECOS), a corporate affiliate of BFI-CSI, in late 1983. In 1984, CECOS was required to submit another application for a final permit valid under the Resource Conservation and Recovery Act (RCRA) program administered by the State of Louisiana. From 1985 through 1986, the United States Environmental Protection Agency (EPA), through the National Environmental Investigations Center (NEIC), eon-ducted inspections of the facility. Subsequently, a suit was filed against CECOS and others by the United States at the request of the EPA. The EPA was joined in the suit by the DEQ. The suit resulted in a consent decree between the parties.
On September 12, 1988, after a review of the permit application, DEQ issued a NOID — notice of intent to deny the request for a permit. See LAC 33:V.703.C.2. Four of the reasons listed by the NOID for the proposed denial were argued before the agency:
A. The inadequate natural geology of the site does not meet the requirements of LAC 33:V.517.T.3.a.;
B. The failure to comply with the 1983 permit regarding the waste analysis plan;
C. The environmental costs exceed the economic benefits; and,
D. The method of land filling waste loads and record keeping did not meet the requirements of LAC 33:V.4499. and 2509.
Upon issuance of the NOID, CECOS requested a hearing. An adjudicatory hearing was held before Dr. Ernest Easterly III. The Attorney General of Louisiana and the Livingston Parish Police Jury intervened in the proceeding.
The hearing officer reported his findings of fact and conclusions of law and recommended that the draft denial be withdrawn and that a draft permit be issued to CE-COS. Generally, the hearing officer found that the geology was adequate and bolstered by the artificial contamination release barriers engineered by CECOS, the compliance history did not warrant a denial, and the potential risks did not outweigh the benefits. On May 8, 1990, Secretary Paul Templet of the DEQ, after a review of the hearing officer’s decision, overruled Dr. Easterly and denied the permit application for three main reasons: (1) the geology of the site was found to be inadequate, (2) the created barriers were suspect and could not compensate for the flawed geology, and (3) *388 continued operation would subject the citizens of Louisiana to unnecessary risk.[2]
CECOS appeals.[3] The specifications of error and complaints can be grouped into six general assignments:
1. The secretary used the wrong standard of review and cannot reverse the hearing officer’s findings of fact unless the officer committed manifest error.
2. The secretary’s findings concerning the geology of the Livingston site are manifestly erroneous, an abuse of discretion, and legal error.
3. The secretary’s findings concerning the facility’s compliance history are manifestly erroneous and arbitrary. The findings were based improperly on the consent decree between CECOS and DEQ.
4. The secretary failed to conduct the risk benefit analysis required by Save Ourselves, Inc. v. Louisiana Environmental Control Commission, 452 So.2d 1152 (La.1984). His findings concerning the risk to the environment and citizens of Livingston Parish were arbitrary, capricious, and constituted manifest error. The failure to articulate specifically his consideration of the economic benefits is in violation of constitutional and statutory provisions.
5. The secretary’s findings and conclusions that the facility held an interim status permit violate state and regulatory provisions.
6.The secretary erred by not recusing himself from the review of the hearing officer's decision, and he should be recused from any further proceeding in this matter.
1. STANDARD OF REVIEW
CECOS equates the findings of fact of the hearing officer with those of a trial court and argues that the secretary must give deference to the hearing officer’s factual determination and cannot overrule the hearing officer unless the secretary finds manifest error. There is no merit to this argument.
LSA-R.S. 30:2018(D) contains the standard of review to be used by the secretary when reviewing a decision of a hearing officer or an administrative law judge.[4] The secretary has the authority to overrule the decision of the hearing officer and render a contrary decision. This authority is tempered only with the requirement that the reversal must be based on the record. The authority is expanded, however, by Section 2018(D)(2)(c), which allows the secretary to gather additional evidence and hold a new hearing or hearings if he desires. The statute does not require that the secretary give deference to the findings of fact of the hearing officer as argued by CECOS. The secretary’s decision can be supported by the record compiled by the hearing officer or a record compiled by the secretary, after new hearings or with additional evidence, or both.
*389 The appropriate standard of review to be used by a court when reviewing an environmental agency decision is the standard of judicial review provided by LSA-R.S. 49:964. Save Ourselves, 452 So.2d at 1158. Unless this court finds a fatal error of law, substantive or procedural, or the agency has committed manifest error in its findings or abuses its discretion in exercising its authority, we cannot reverse.[5] See Sistler v. Liberty Mutual Insurance Company, 558 So.2d 1106, 1111-12 (La.1990); Save Ourselves, 452 So.2d at 1158-59.
2. GEOLOGY OF THE SITE
There is a broad range of expert testimony available in the record. The tests and borings conducted on the site in preparation for the new RCRA permit application were more extensive than those originally done for the 1983 permit application. The experts agreed that the site lies in the geologic area of the state known as the Middle Prairie Terrace. The experts agreed that clay deposits comprise part of the geology at the site and that CECOS has built barriers around the site and the containment cells. The slurry walls were to be grounded on an impermeable clay strata found below the surface of the site. CE-COS has also constructed the cells from plans based on state-of-the-art technology and built engineering systems to detect and warn of contamination. The existence of an aquifer below the site was also noted by the experts. There is very little agreement on more specific points.
Dr. David Daniel, a geotechnical engineer hired by CECOS, based his testimony on reports submitted to him by CECOS. Dr. Daniel considered the design of the lining and cover system for the secure containment cells employed by CECOS to be the best in the world. He felt that the system contained little risk of leakage or release of contaminates and that the geology present at the site allowed minimal infiltration if an accident did occur. However, he did agree that unless construction plans were followed, the system could fail.
CECOS, based on data compiled by Putnam, Hayes & Bartlett, Inc., calculated that any release of contaminates would take 400-500 years to travel to the nearest residents. Dr. Gordon Boutwell, a geotech-nical engineer called by CECOS, testified that the nearest regional aquifer is found approximately 250 feet below the facility and is separated from the sand strata source below the facility by a substantial aquitard of clay.
CECOS argues that the combination of the natural barriers and the engineered barriers eliminates most of the risk of contamination of the water recharge zone or deeper aquifer present at the site. The hearing officer apparently agreed and found that the natural or created barriers would isolate the secure cells from land adjacent to the facility and from surface or subsurface waters. However, the hearing officer did have concerns about the systems engineered to remediate the problematic geology, the tracking system for accepted containers, quality control during construction, and the groundwater moniter-ing system, among others. Recommendations for improvement were made in the hearing officer’s report that he felt should be addressed in the draft permit. See Hearing Officer’s Report, Recommendations Nos. 1-9.
Dr. Jeffrey Hanor, a geologist, testified for DEQ. He undertook a study of the site and determined that the geology was site specific and very complex. In his opinion, bodies of sand transect the entire site more often than is apparent from the strata-graphic profile offered by CECOS. The *390 site is behaving hydraulically as a large mass of silty sand even though it contains beds of clay. Because a channel of sand runs through the various strata, the ground water can move from one stratum to the next. The clay deposits are not massive and the composition of the clay in this region is suspect in its ability to retard the migration of contaminates. According to Dr. Hanor, any contamination released could migrate to the underlying aquifer system within ten years.
Mr. Joseph Hebert, a geologist for DEQ, found the site to be unsuitable for a hazardous waste management facility. In his opinion, one-half of Phase Two of the facility is underlain by a sand channel. Because of the geology of the area, he was concerned with the possibility of contamination of water resources.
Witnesses for CECOS testified that the construction plan for the facility and the containment cells was followed and quality control personnel were present to oversee the step-by-step operation. Witnesses for DEQ, however, related incidents of poor construction techniques and lack of supervision.
The hearing officer found that the quality control had been adequate, but past irregularity should be addressed in the draft permit. See Hearing Officer’s Report, Findings of Fact, specifically No. 52. The hearing officer also found that CECOS had utilized independent consulting firms to insure quality control and that the liner system, the natural clay, and engineered barriers provided protection well within DEQ regulations. See Hearing Officer’s Report, Findings of Fact, specifically No. 32, and Conclusions of Law Nos. 19 and 20.
The secretary reviewed the record and the findings of fact of the parties and the hearing officer. Based on his review, he made his own findings of fact and concluded that the subsurface geology of the facility is fatally flawed. He concluded that because of quality control and construction irregularities, the engineered barriers were not effective safeguards and could not compensate for the inherently deficient geology of the site, nor guarantee isolation of hazardous contaminates over time. He expressed an unwillingness to rely completely on the liner system, because “the longevity of synthetics used for liner material had not yet been proved.” Secretary’s Decision dated May 8, 1990, Finding of Fact No. 8. Allowing continued disposal of hazardous waste at this facility, in the secretary’s opinion, would be unwise and would subject the citizens of Louisiana to unnecessary risks. Secretary’s Decision dated May 8, 1990.
The findings of fact of the secretary are supported by the record and are not manifestly erroneous. His conclusions, drawn from the facts and based upon a review of the record, are also supported by specific sections of the record and are often the result of accepting one credible expert over another. The secretary articulated a rational connection between the facts found and the order issued, the denial of the permit. We find that his exercise of the authority granted to him by law was not a clearly unwarranted exercise of discretion.
Neither do we find any error of law in his interpretation of the applicable DEQ regulations. In effect, the secretary found the conditions at the site not acceptable for the planned purpose. See LAC 33:V.517.-T.3.a. The expert testimony varied concerning whether the CECOS facility met the DEQ regulations which require natural stable soils with low permeability and isolation of contaminates from subsurface and surface waters by means of natural or created barriers acceptable to the administrative authority. See LAC 33:V.1503.A.2. and B.l. The conclusion of the secretary that the regulatory requirements were not met was based on his acceptance of the testimony of particular experts and the evidence they submitted. See Secretary’s Findings of Fact Nos. 1-11 and Conclusions of Law Nos. 5-8. Two permissible views of the evidence dependent on expert testimony in the record were presented. The secretary’s choice of experts and his interpretation of the regulations, in light of this choice, was not error.
*391 3. COMPLIANCE HISTORY
LSA-R.S. 30:2014(A) provides, in part, as follows:
[PJrior to the grant of any permit ... to any facility, each assistant secretary shall submit a report describing the history of violations and compliance for that facility. In considering the granting or denial of the permit ... due consideration shall be given to the violation and compliance history of that facility.
The article mandates a review by the secretary of not only the history of violations, but also the compliance history in general. It does not exclude from consideration any infringement short of a cited violation. Any evidence having a bearing on the proceedings can be considered by DEQ. In the Matter of Marine Shale Processors, Inc. Request for an Air Quality Variance, 566 So.2d 994 (La.App. 1st Cir.1990.)
There was testimony by NEIC safety investigators and former CECOS employees that CECOS did not always comply with the 1983 permit requirements. The shortcomings included cell construction irregularities and insufficient quality control supervision, the waste analysis plan, and logging and tracking of the accepted hazardous waste containers. CECOS argues that the hearing officer rejected the credibility of these witnesses or found the allegations stale. The secretary, however, is not bound by the hearing officer’s determination.
CECOS specifically objects to any evidence in the record of violations or noncompliance that may have come from litigation between the United States and CECOS that resulted in a consent decree.[6] CECOS argues that the decree resolved the issues between the parties. Therefore, past violations, which have been resolved, cannot be grounds for a denial of a permit. CECOS also applies the doctrine of res judicata and argues that any further attempt to bring up the claims is barred.
In Section 16 of the consent decree the parties agreed, in part, as follows:[7]
* * * * ⅜ ¡jC
This Consent Decree shall not be construed as a waiver or limitation of any rights, remedies, powers and/or authorities which the United States, EPA, the State of Louisiana, or LDEQ has under RCRA, CERCLA, LEQA, or any other statutory, regulatory or common law enforcement authority.
Jjc ⅜ ⅜ ⅜! ⅜ Sfc
This Consent Decree shall not be construed as a ruling or determination of any issue related to any Federal, State, or local permit, if required in order to implement this Consent Decree or required in order to continue or alter operations of the facility (including but not limited to construction, operation or closure permits required under RCRA) and the Defendants shall remain subject to all such permitting requirements. The Defendants shall be responsible for obtaining any Federal, state, or local permits) for any activity at the facility including those necessary for the performance of the work required by this Consent Decree and for the operation or closure of the facility.
One of the requirements in the permitting process, before the secretary can grant a permit, is the review of the compliance history. LSA-R.S. 30:2014(A). The consent decree does not contain any language that would bar review by the secretary of the compliance history of the facility that may have been at issue in the suit or bar consideration of continued violations.
The record contains independent evidence concerning the non-compliance by CECOS asserted in the suit. CECOS had an opportunity to respond during the hearing, therefore, due process has not been violated. See Marine Shale Processors, *392 Inc. Request for an Air Quality Variance, 566 So.2d 994 (La.App. 1st Cir.1990).
The review of the compliance history was not an attempt by the secretary to reliti-gate the claims. The secretary merely attempted to follow the mandate of article 2014(A) by reviewing the facility’s compliance history. See Secretary’s Decision dated May 8, 1990, Conclusion of Law No. 9. The secretary found that the compliance history did not indicate that CECOS would take measures sufficient “to insure proper treatment, storage and disposal of hazardous waste.” Secretary’s Decision dated May 8, 1990, Finding of Fact No. 12. A history of substantial past problems, even if subsequently corrected, is a valid consideration in reviewing a permit application.
The argument based on the doctrine of res judicata fails, as well. The proceedings are different and do not meet the requirements of LSA-R.S. 13:4231. The litigation involved in the suit by the United States and EPA was based on violations of RCRA, 42 USC 6901, et seq., and the Louisiana statutes. Civil penalties and injunc-tive relief were sought. The proceeding conducted by the DEQ was a review, requested by CECOS, of a notice of intent to deny the CECOS permit application.
. Under the facts here, we find no error in the secretary’s review of the compliance history or his conclusions.
4. RISK BENEFIT ANALYSIS
CECOS complains that the secretary failed to conduct the proper risk benefit analysis required by Save Ourselves. We find no merit in this argument.
Detailed evidence appears in the record on which a risk benefit analysis can be based. CECOS submitted evidence of economic benefits and, in response to DEQ inquiries, submitted information concerning the protection of the environment against contamination and the possibility of increased costs from additional police and fire protection. Evidence was available in the record concerning the possibility of contamination migration, contamination to the water recharge zones, and contamination to the deep aquifer. A public hearing solicited comments from the residents.
The hearing officer found that the risk of environmental harm was acceptable when balanced with the economic benefits. Hearing Officer’s Decision, Finding of Fact No. 112. However, the secretary found that a greater risk to the environment existed. See Secretary’s Decision dated May 8, 1990. The findings of the secretary exhibit an acceptance of expert testimony concerning the water recharge zones, the aquifer, and the inadequate geology of the site, as well as the testimony concerning construction, tracking, and waste management lapses.
CECOS argues that a rule of reasonableness requires an operational facility, such as the Livingston facility, be continued. CECOS asserts that the state needs a hazardous waste facility, a previous decision was made in 1983 that the facility should be permitted, and CECOS has committed substantial resources to improving the facility.
We agree that these points should be considered in the balancing of the risks and benefits. However, the gravity of the harm, contamination of our natural resources, must also be taken into consideration when balancing the benefits versus the risks.
Harm to the environment cannot always be quantified as easily as the economic benefits derived from taxes and salaries. A need for a hazardous waste management facility at this site must be balanced against our future need for clean water resources and the possibility of contamination of these resources. A balancing is required to insure protection of the environment without too high a cost to the economy and our way of life.
Save Ourselves does not require a particular type of risk benefit analysis or that all the balancing be articulated and explained in detail in the secretary’s decision. The secretary obviously attempted to answer the question of whether environmental costs outweigh the social and economic benefits by stating that continuance of the hazardous waste disposal plant at the Liv *393 ingston site would subject the citizens to undue risk; risk exceeding or violating the standards set by society.
A less than ideally clear decision can be upheld if the agency analysis can be reasonably discerned. This is the case when the findings, reasons, and exercise of discretion are obviously implied by the record. Save Ourselves, 452 So.2d at 1160; In re Marine Shale.
The secretary’s analysis of the risks and benefits can be reasonably discerned. He made his decision after a review of a record containing expert testimony and evidence on the economic and societal benefits from the facility and the risk of water contamination and harm to the environment. The secretary noted the problems and concluded that the risk was not warranted or acceptable.
Based on a review of the entire record, we cannot say that the secretary abused his discretion in determining that the risk and gravity of the possible harm outweighed the social and economic benefits or that the secretary failed to make the proper analysis.
5. VALIDITY OF THE PERMIT
CECOS argues that the 1983 permit is a final, standard permit. Therefore, CE-COS is entitled to operate under the final permit for ten years.
The 1983 permit was issued pursuant to the Louisiana Environmental Affairs Act, LSA-R.S. 30:1051, et seq., renamed in 1984 the Environmental Quality Act, LSA-R.S. 30:2001, et seq. The permit was also governed by the Louisiana Hazardous Waste Control Law, the rules and regulations of the Hazardous Waste Management Plan (HWMP) and the rules of procedure of the Louisiana Environmental Control Commission, in effect at the time. Paragraph 4 of the permit states that “[t]he operation of the treatment, storage or disposal facilities governed by this permit shall be subject to the requirements of the interim status standards specified in the HWMP, Section 5.2.2 A., as amended.”[8] Interim status was envisioned to allow facilities to operate until they could apply for their final permits valid under the RCRA program administered by the state. See HWMP, Sections 5.2.2 and 5.2.3 (1979) and later revisions; and LAC 33:V.4301. (governing interim status facilities).
The regulatory framework for hazardous waste management groups recognizes only two classes of facilities, those with interim status and those with a final permit. See HWMP 5.2.3 and LAC 33:V.303.B., E., & G. In 1985, CECOS submitted a part 1 and part 2 application when requested by the agency and as required by LAC 33:V.4301.-A. for interim status facilities. We find that the permit issued in 1983 is an interim status permit subject to further approval by DEQ.
6. RECUSAL
CECOS assigns error to the secretary’s review of the hearing officer’s decision in a case in which the secretary had made the initial decision to issue the NOID. However, CECOS asks only that the secretary be recused from further participation in the proceedings if this court should reverse the decision of the secretary and remand the matter to the agency for further proceedings.
The record does not contain any clear basis for a request for recusal based on bias. The secretary has authority to grant or deny permits and to issue the NOID. No hearing was conducted before the NOID was issued and the issuance of the NOID does not equate to a prehearing judgment by the secretary. The hearing was conducted by a qualified hearing officer and reviewed by the secretary pursuant to law. However, because this court is affirming the decision of the agency denying the permit application, it is not necessary for us to address the issue of the *394 secretary’s recusal from further participation on a remand.
For the foregoing reasons, we affirm the secretary’s decision. All costs of this appeal are to be paid by appellant, CECOS International, Inc.
AFFIRMED.
*395 [[Image here]]
Dear Sir:
This is to inform you of my decision concerning the Cecos Livingston facility's application for a Hazardous Waste Disposal Permit.
Based on my review of the adjudicatory hearing record and the Findings of Fact of the parties and hearing officer, it is my decision that the Notice of Intent to Deny issued by the Hazardous Waste Division be upheld and I am therefore denying the operating permit for this facility.
Specifically, my review has revealed that the subsurface geology of the facility is fatally flawed. Design and construction of the land disposal units cannot compensate- for the inherently deficient geology of this site, nor guarantee isolation of hazardous constituents over time. Allowing continued disposal of hazardous waste at this facility would be imprudent and would ..subject 'the citizens' .of this State to undue risks. This determination is based on the following findings of fact and conclusions of law.
Findings of.Fact
1. Shallow drinking water aquifers exist beneath the site which serve households in the near vicinity.
2. The boring logs from the site show a great diversity in stratigraphy with large amounts of sand present at all depths. Sand exhibits a high permeability and represents potential contaminant migration pathways.
OFFICE OF THE SECRETARY P.O. BOX 44066 BATON ROUGE, LOUISIANA 70804
AN EQUAL OPPORTUNITY EMPLOYER
*396 CECOS International, Incorporated
May 8, 1990
Page 2
'3. A significant number of discontinuous sand and silt bodies (such as lenses and stringers) exist in the shallow subsurface of the facility which at specific locations are interconnected to or separated from other permeable layers only by small intervals of clay. These interconnections are potential contaminant migration pathways.
4. Two large continuous sand channels underlie much of the site and are at specific locations connected to other permeable layers. These interconnections are potential contaminant migration pathways.
5. Large amounts of sand exist immediately adjacent to and immediately beneath the proposed landfill cells.
6. Sand boils have occurred at the site.
7. Features of secondary porosity such as slickensides and jointing exist in the clay layers beneath the facility as represented in .boring logs submitted by Cecos-. These features increase the permeability of the clay.
8. The longevity of synthetics .used for liner •material has yet to be proved.
9. Quality control deficiencies related to construction indicate that the land disposal units will not possess the• qualities represented in the permit application.
10. Only the natural geology of the site will prevent off • sité migration of hazardous constituents should an undetected .contaminant release occur.
11. The application proposes a significant expansion of land disposal of hazardous waste which will increase the risk of migration of constituents into the subsurface soils and groundwater at this site.
*397 CECOS International, Incorporated
May 8, 1990
Page 3
12. The compliance history of this facility does not indicate that the applicant will take sufficient measures to insure proper treatment, storage and disposal of hazardous waste.
13. The applicant did not adequately investigate ■ • the possibility of alternative sites for its proposed facilities and thus did not demonstrate that the Livingston site is better suited for land disposal than other sites.
Conclusions of Law
1. . Prior to a final determination on the RCRA Part II application, CECOS has been subject to the provisions of the state permit issued by the Environmental Control Commission in and the interim status regulations of the Hazardous Waste Regulations. LAC 33.V.315.D, 703 B.6 and 4301.B.
2. The Hazardous Waste División permit staff reviewed the CECOS RCRA application and issued a tentative decision to deny the operating permit for the facility in accordance with LAC 33:V.703 C.2.
3. An adjudicatory hearing on the RCRA permit application was held pursuant to the mandate of LAC 33.V.709 A.l and Rule 5.0 of the Rules • of Procedure for the Louisiana Environmental Control Commission (July 22,1980).
4. The adjudicatory hearing on the permit application was held in accordance with the Rules of Procedure for the Louisiana Control .Commission, Rules 5.0 and 6.0 et seq and the Administrative Procedure Act, La.R.S.49:950 et seq.
5. The Hazardous Waste Regulations state that the soils suitable for a hazardous waste site should be soils of low permeability or that other means acceptable to the administrative authority must be provided to isolate the site from subsurface waters. LAC .33:V. 1503 .
*398 CECOS International, Incorporated
May 8, 1990
Page 4
6. Although the Hazardous Waste Regulations do not address what is acceptable to the administrative authority to provide isolation from subsurface waters, they require the applicant to submit a certification that the ground and subsurface conditions at the site are acceptable for its planned purposes; thus natural barriers must be considered in a determination of site suitability. LAC 33.V.517.T.3.a.
7. CECOS has failed to comply with the provisions of its ECC permit and the provisions of the Hazardous Waste Regulations concerning the sampling, analysis and tracking of wastes at its Livingston facility. LAC 33.V. 4313 and 1519.
8. Applicant's noncompliance with its existing permits, including the ECC permit and the interim status permit, .is grounds for termination of .those permits and denial of the application for a- RCRA permit. LAC
33,V.323.B.3.b.i.
9. The secretary must consider the violations and compliance history 'of a facility when determining whether to grant or deny a permit. La. R.S.30:2014 .A.
10. The secretary of the Department of Environmental Quality has the authority to grant or deny permits and to render decisions that are contrary to the record developed by the administrative law judge. (La.R.S.30:2011 (D) (2) and La.R.S. 30:2018(D)(2)(b).
11. The secretary shall act as the primary public trustee of the environment and shall consider and follow the will and intent of the Louisiana Constitution and Louisiana statutory law in making any determination relative to . the granting or denying of a permit. La. R.S.30:2014.A.
*399 CECOS International, Incorporated
May 8, 1990
Page 5
12. The Louisiana Constitution mandates protection and conservation of the natural resources of the state insofar as possible and consistent with the health, safety and welfare of the people. La. Constitution, Article IX, Section 1.
Appended to this document are my responses to the proposed Findings of Fact and Conclusions of Law submitted by the parties to the hearing.
This permit decision includes a denial of the acceptance of hazardous waste in Cell 18.
Closure and Post Closure permits for the facility will be required pursuant to Subchapter F of LAC 33:V. Chapter 43.
Interim status for the facility is extended to 30 days from the date of receipt of this decision.
Please be advised that this denial may be appealed to the First Circuit Court of Appeal if a motion for appeal is filed with the department within thirty days after receipt of this decision. La.R.S.30:2024:C. and LAC 33.V.705:
[[Image here]]
Paul H. Templet, Ph.D. AdSecretary
Department of Environmental Quality
PT:mm
Attachment
cc: Mr. Gordon Green
Mr. Michael P. Smith
Mr. Allyn Davis
Mr. Steve Jacobs
Mr. Samuel Buckley
Mr, James Kuhn

. BFI-CSI bought all of the stock of the original operator of the facility, Southwest Environmental Corporation.

. The secretary's decision is attached as Appendix A.

. CECOS submitted an application for a permit and requested specific authorization to expand into a new secure cell, number 18. This authorization was denied at the same time the permit application was denied. CECOS also appeals the authorization denial. We affirm that denial for the same reasons used to support the affirmance of the denial of the permit. The secretary did not abuse his discretion or violate the law in denying the request.

. LSA-R.S. 30:2018(D) specifically provides, as follows:
An administrative law judge shall file orders issued or decisions rendered with the secretary and the commission and forward a copy by mail, postage prepaid, to all parties or their counsel of record. Each such order or decision shall become final as to any party thirty days after the mailing of a copy to that party, unless within that time the party files a written motion for review stating the grounds upon which the review is requested. Upon receipt of the motion for review, the secretary or commission may:
(1) Deny the motion, at which time the order or decision shall become final; or
(2) Grant the motion as to one or more of the grounds on which the review is requested and:
(a) Remand the matter with instructions to the administrative law judge; or
(b) Overrule the decision or order of the administrative law judge and render a contrary decision or order based on the record developed by the administrative law judge; or
(c) Hold new hearings or collect additional evidence or both and render its own decision or issue its own order thereon.

. CECOS directs this court's attention to a sentence from the secretary’s conclusion of law No. 10, which states: "The secretary ... has the authority ... to render decisions that are contrary to the record_” CECOS argues that the secretary applied the wrong standard in his review and, therefore, his decision is invalid. A review of the record, however, makes it clear that the correct standard was used and that the use of the clause "contrary to the record" was inadvertent error. The correct statute, LSA-R.S. 30:2018, was cited by the secretary. Section 2018 allows the secretary to make a decision contrary to the hearing officer’s decision if based on the record. The secretary’s decision specifically refers to a review of the record, the findings of fact of both parties, and the hearing officer’s findings of fact.

. The case is entitled the United States of America v. Browning-Ferris Industries, Chemical Services, Inc. and CECOS International, Inc., 704 F.Supp. 1355 (M.D.La.1988). The State of Louisiana intervened in the suit.

. CERCLA stands for Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601, et seq., and LEQA for the Louisiana Environmental Quality Act.

. HWMP regulations were renamed the Louisiana Hazardous Waste Regulations and are codified in the Louisiana Administrative Code (LAC). HWMP, Section 5.2.2 A. has been replaced by LAC 33:V.703.B.6.