ARMSTRONG, Judge.
Plaintiff, Browning-Ferris, Inc. (“BFI”), appeals the trial court’s denial of its petition for a preliminary injunction enjoining defendants, Recovery I, Inc. (“Recovery I”) and the City of New Orleans (“the City”), from fulfilling the terms of a 1991 agreement between the two defendants and the Louisiana Department of Environmental Quality (the “DEQ”) pertaining to the operation and closure of a solid waste landfill in eastern New Orleans.
In 1974, the City and Waste Management, Inc. (<cWaste Management”), Recovery I’s parent company, entered into a contract in which it was agreed that a solid waste landfill (“the Landfill”) would be constructed on city-owned property in Eastern New Orleans and operated by Waste Management. The 1974 contract, which was awarded after competí- *248 tive bidding, gave Waste Management the right to receive city-generated garbage and to fulfill its operations through its wholly-owned subsidiary, Recovery I. Under the terms of the contract the City had some obligation with regard to the closure of the Landfill. Recovery I operated the landfill until October 17, 1988, when the contract expired. A1986 permit issued to Recovery I by the DEQ also expired at that time. Pursuant to that permit, Recovery I was required to achieve final closure of the Landfill. Prior to the expiration of the permit, at the request of Recovery I, the DEQ deferred the final closure date to December 21, 1988. On April 12,1990, when final closure still had not been achieved, the DEQ issued a Compliance Order to Recovery I ordering it to submit a final closure plan within thirty (30) days. Recovery I subsequently appealed the Compliance Order.
In September 1991, after continuing negotiations, the City, Recovery I and the DEQ, entered into a “Compromise Agreement.” Pursuant to the terms of the Compromise Agreement, the City and Recovery I entered into a “Settlement Agreement” which was to be executed at the same time as, and was a part of, the Compromise Agreement. Under the terms of the Compromise Agreement, the DEQ agreed to authorize the operation of the Landfill according to the terms of the Settlement Agreement. The Compromise Agreement recited the terms of the Settlement Agreement as providing that Recovery I would operate the Landfill for up to three years and be required to achieve final closure of the Landfill according to the terms of an attached closure plan. Under the terms of the Settlement Agreement, Recovery I was entitled to receive city-generated solid waste at the rate of $19.00 per ton. The 1974 contract had provided that the City would pay Waste Management $10.95 per ton of solid waste.
The effect of the Compromise and the Settlement Agreements was that Recovery I received the right to operate the city-owned Landfill for up to three more years and receive city-generated solid waste for which the City will pay it $19.00 per ton and, in turn, Recovery I assumed responsibility for the closure of the facility.
BFI filed this suit seeking a preliminary injunction to enjoin the execution of the agreements on the grounds that the agreement between the City and Recovery I violated public bid laws. The matter was tried on the verified pleadings and affidavits filed by each side. The trial court denied the petition for preliminary injunction, finding that the Settlement Agreement was a settlement of problems arising out of the 1974 contract, and that neither state law nor the City’s Home Rule Charter required that amendments, changes or modifications of a preexisting contract to be let out “again” for public bid to settle differences arising out of that contract. The trial court also mentioned that the Settlement Agreement was entered into in response to “the heat and requirements” by the DEQ. The trial court overruled exceptions of lack of subject matter jurisdiction, improper venue, nonjoinder of a necessary party, nonjoinder of an indispensable party, no right of action and no cause of action raised by defendants. All of these exceptions were grounded on the DEQ’s inextricable involvement in the negotiations and agreements.
Plaintiff BFI appeals the trial court’s finding that the process did not violate the public bid laws. Defendants maintain the trial court erred in denying their exceptions, including lack of subject matter jurisdiction.[1] “A judgment rendered by a court which has no jurisdiction over the subject matter of the action or proceeding is void.” La.C.C.P. art. 3. Because a judgment rendered by a trial court lacking subject matter jurisdiction is fatally flawed and may be attacked at any time, we find the dispositive issue in this appeal is whether or not the trial court had jurisdiction over the subject matter of this action. For the following reasons, we find that the Settlement and Compromise Agreements were in settlement of an enforcement action by the DEQ and, therefore, pursuant *249 to state law, the Court of Appeal, First Circuit, has exclusive jurisdiction over the subject matter of this case.
The Compromise Agreement entered into by the City, Recovery I and the DEQ recited in pertinent part that:
WHEREAS, permit number 0076 was issued on March 14, 1986 by the State of Louisiana to Recovery I, Inc. for operation of a facility known as Recovery I (“Recovery”).
WHEREAS, the City of New Orleans is the owner of property upon which Recovery is located.
WHEREAS, in 1974, the City entered into a contract with Recovery I, Inc. for the construction and operation of a facility known as Recovery I.
WHEREAS, among other obligations, the Contract required the City to provide cover material during operations and for closure of the facility, and to construct certain improvements, all as set forth in said contract.
WHEREAS, prior to the expiration-of the permit issued to Recovery I, Inc., a new permit application was submitted to DEQ by Recovery I, Inc.
WHEREAS, certain conflicts arose involving La.DEQ, Recovery I, Inc., and/or City. As a result of the conflicts and the actions of La.DEQ, Recovery I, Inc. and the City, no new permit was ever issued, no final cover was applied and no closure was accomplished.
WHEREAS, since the expiration of the permit, the site has not operated and no final cover placed or closure accomplished.
WHEREAS, DEQ asserts that Recovery I, Inc. as permit holder is the only party authorized to cover and close the Facility.
WHEREAS, DEQ issued a compliance order, entitled “In the Matter of Recovery I, Inc., Docket No. S-C-90-0085”, to require Recovery I, Inc. to cover and close and has previously asserted that violations of laws and regulations have occurred in connection with the facility.
WHEREAS, Recovery I, Inc. appealed the compliance order and contends that La.DEQ relieved Recovery I, Inc. of any and all liability and/or responsibility for cover and closure. Recovery I, Inc. also contends as a result of agreements, between City and La.DEQ, that the City has specifically undertaken all responsibility and liability to La.DEQ and otherwise for cover and closure, and that Recovery I, Inc. has not been guilty of violations of law and regulations in the operation of the facility.
WHEREAS, the City acknowledges that while it was contractually obligated to Recovery I, Inc. to supply all cover material, it contends it is financially unable to carry out its responsibility for supplying suitable cover. Further, the City and La.DEQ deny that the City accepted all responsibility for cover and closure.
WHEREAS, providing for proper cover and closure will result in environmental benefits and all parties desire that closure and post closure care be accomplished and the participation of all parties is necessary to accomplish these results.
* * * * * *
NOW, THEREFORE, AND IN CONSIDERATION of the respective covenants herein contained and in order to resolve all the disputes currently existing between and among the parties and in order to provide for the placement of final cover, closure, and post-closure care of the Facility in a manner which will provide a solution to the various disputes, the parties agree as follows:
⅜ ⅜ ⅜ ⅜ ⅜ #
2. Pursuant to the attached Settlement Agreement, which shall be executed between Recovery I, Inc. and the City as a part of this Compromise Agreement (Attachment B), Recovery I, Inc. will operate Recovery I for up to three years or until the date the existing facilities are mandated to close pursuant to proposed revision of Title 4(D) of RCRA, whichever is earlier. Any modifications of the agreement between the City and Recovery I, inc. [sic] to this agreement after the execution *250 thereof shall not alter the obligations of either party to La.DEQ.
* * * * * *
The Settlement Agreement set forth in more detail the respective rights and obligations of the City and Recovery I as between those two parties. The DEQ was not a party to the Settlement Agreement. However, the DEQ agreed to and approved all parts of the Settlement Agreement and it was an integral and necessary part of the Compromise Agreement. Without the Settlement Agreement there would have beeri no Compromise Agreement. The Settlement Agreement cannot be viewed separate and apart from the Compromise Agreement.
The Compromise and Settlement Agreements were designed to do one thing — -settle Recovery I’s appeal of the Compliance Order issued by the DEQ by achieving cover and closure of the Landfill. To attain that objective and put an end to the DEQ enforcement procedure, all three parties agreed that (1) Recovery I would receive the opportunity to operate the Landfill for approximately three more years and receive city-generated garbage, and (2) that the City would be relieved of the responsibility of having to provide closure material.
The object of plaintiffs demand in this action, a preliminary injunction enjoining the operation of the Landfill pursuant to the Settlement and Compromise Agreements, is directed to the heart of these agreements which settled and put an end to a DEQ enforcement action.
La.R.S. 30:2024(C) provides:
C. Any person aggrieved by a final decision or order of the secretary may appeal there from to the Court of Appeal, First Circuit, if a motion for an appeal is filed with the secretary [of DEQ] within thirty days after the final decision or order is served upon the respondent. Any preliminary, procedural, or intermediate ruling or decision by the secretary is subject to the supervisory jurisdiction of the appellate court as provided by Article V, Section 10 of the Constitution of Louisiana. The Court of Appeal, First Circuit, shall promulgate rules of procedure to be followed in taking and lodging such appeals. The provisions of R.S. 49:962 and 964 [of the Administrative Procedure Act] shall not apply to decisions and orders of the secretary.
This legislative grant of exclusive appellate jurisdiction to review final decisions and orders of the DEQ to the Court of Appeal, First Circuit, has been held constitutional by the Louisiana Supreme Court. Matter of American Waste & Pollution Control Co., 688 So.2d 367 (La.1991). In finding the jurisdictional grant constitutional the court stated:
La. Const, art. IX, Sec. 1 directs the Legislature to enact laws to implement the constitutionally mandated policy of protecting, conserving and replenishing the natural resources of the-state. The delegates to the 1973 Constitutional Convention delegated specific decisions regarding protection of the state’s environment to the Legislature. The scheme envisioned by the Legislature includes the establishment of the DEQ, an executive agency, provision 'for the exercise of quasi-judicial authority by that agency, appellate review of DEQ final determinations in permit and enforcement actions in the First Circuit Court of Appeal, and litigation in the district courts for enforcement of DEQ penalties ór sanctions. The Legislature has acted within its prerogative in enacting statutes which delegate environmental regulatory and quasi-judicial authority to the DEQ within the executive branch, and which establish a constitutional process for judicial review of DEQ final determinations in permit and enforcement actions. (Emphasis added.)
Id. at 372.
To view the instant case simply as concerning a contract between the City and Recovery I, as urged by plaintiff BFI, is to ignore the fact that the Settlement and Compromise Agreements are in compromise and settlement of a DEQ enforcement action. The umbrella placed over this state’s environmental affairs by the legislature necessarily envisions the competing interests of many parties. The rights of these parties will be governed by conventional obligations and *251 contracts. To excise contractual rights and obligations from DEQ mandated settlement and compromise agreements for litigation in district and appellate courts throughout the state would, we feel, unnecessarily wreak havoc upon the legislative scheme designed to protect the state’s environment. We will not consider this a simple contract matter solely because it involves contractual rights and obligations. We will examine the DEQ action to determine whether it falls within R.S. 30:2024(0).
To be an aggrieved party within the meaning of La.R.S. 30:2024(C), a party must have a real and actual interest which is or may be adversely affected by the DEQ decision or order. See Matter of BASF Corp., Chemical Division, 533 So.2d 971 (La. App. 1st Cir.1988), writ granted, 539 So.2d 624 (La.1989), writs denied, 539 So.2d 624 and 541 So.2d 900 (La.1989);[2] La.C.C.P. art. 681. There is no requirement in the statute that the party necessarily be aggrieved by the environmental impact of the DEQ decision or order, only that it be aggrieved in some way. Also, the aggrieved party under R.S. 30:2024(0) need not have been previously involved in the subject matter of the action to appeal a DEQ final decision or order. See Matter of BASF Corp., Chemical Division, supra. In the instant case, there is no question but that plaintiff BFI had a real and actual interest which was adversely affected by the terms and effect of the Compromise and Settlement Agreements and was, therefore, an aggrieved party within the meaning of La.R.S. 30:2024(0).
In a separate appeal arising out of this same factual occurrence, Matter of Recovery I, Inc., 622 So.2d 272 (La.App. 1st Cir.1993), the First Circuit Court of Appeal held that the settlement agreement between the DEQ, the City and Recovery I, providing for the operation of the landfill by Recovery I for three years and final closure, was “a final decision or order of the DEQ which is subject to appeal by an aggrieved party under La.R.S. 30:2024(0)....” Id. at 275.[3] The settlement agreement considered by the court in Matter of Recovery I, Inc., supra consisted of the identical Compromise and Settlement Agreements at issue in the instant case. We agree with the First Circuit that the Compromise and Settlement Agreements between the DEQ, the City and Recovery I constituted a final decision or order by the DEQ as contemplated by R.S. 30:2024(C). See also Matter of Marine Shale Processors, Inc., 563 So.2d 278 (La.App. 1st Cir.1990).
The agreement between the DEQ, the City and Recovery I allowing Recovery I to operate the Landfill and receive city-generated waste for three more years in exchange for effecting closure of the Landfill at the end of that period was a final decision or order within the meaning of La.R.S. 30:2024(C). As a party aggrieved by that final decision or order of the DEQ, BFI’s remedy was the filing of an appeal with the Court of Appeal, First Circuit in accordance with La.R.S. 30:2024(0, not the filing of a civil suit in the Civil District Court for the Parish of Orleans. The trial court was without jurisdiction over the subject matter of this action and, therefore, the judgment is void as a matter of law.
For the foregoing reasons, we vacate the judgment of the trial court and transfer plaintiff BFI’s action to the Court of Appeal, First Circuit, State of Louisiana.
VACATED; TRANSFERRED.
JONES, J., dissenting with written reasons.

. Even though defendants did not take an appeal from the trial court’s denial of their exceptions, the exception of lack of subject matter jurisdiction is properly before us. See La.C.C.P. art. 925.

. Matter of BASF Corp., Chemical Division, supra, addressed R.S. 30:1072 which was later redesignated as R.S. 30:2024.

. Matter of Recovery I, Inc., supra, involved an appeal by a group of sixteen civic and environmental groups.