521 So.2d 710 (1988)
In the Matter of SHREVEPORT SANITARY AND INDUSTRIAL LANDFILL.
No. 87 CA 0022.
Court of Appeal of Louisiana, First Circuit.
February 23, 1988.
*711 Doris Falkenheiner, Baton Rouge, for appellant, Caddo Environmental Action League.
Frank Craig, III, Breazeale, Sachse & Wilson, Baton Rouge, for appellee City of Shreveport.
Ann CoCo, D.E.Q., Baton Rouge, for Dept. of Environmental Quality.
Before SHORTESS, LANIER and CRAIN, JJ.
SHORTESS, Judge.
This is an appeal from a decision of the Department of Environmental Quality (DEQ) which granted a permit to the City of Shreveport for the construction of a sanitary landfill. DEQ is the agency of the State of Louisiana entrusted with protection and regulation of, among other environmental concerns, solid waste disposal. LSA-R.S. 30:1061(A)(1).[1] The Caddo Environmental Action League (CEAL) appealed, and this appeal is before us by operation of LSA-R.S. 30:1072(C), which gives this court exclusive jurisdiction of all appeals of DEQ decisions.
On October 10, 1986, Patricia L. Norton, secretary of DEQ, issued permit number P-0120 which approved the City of Shreveport's application for construction of a sanitary landfill at the Woolworth Road site in T16N, R15W, Sections 21, 28, and 29 of Caddo Parish, to serve the city as well as other areas of Caddo Parish. Two public hearings were held before the permit was *712 issued.[2] The transcripts of each reveals considerable public participation. CEAL, whose members are nearby landowners, residents, and others, voiced their concerns at these hearings regarding, among other things, the possibility of water contamination, the effect of increased traffic on the major thoroughfares near the application site, litter strewn along these thoroughfares, the likelihood of contamination of the landfill from hazardous waste, the possibility of unpleasant odors and the safety of the students of a nearby school.
These concerns were addressed by city officials at the second public hearing. City representatives, including Mayor John Hussey and Bruce Adams of URS Engineers, the consulting firm for the design of the landfill, spoke. Following their presentation, some twenty members of the public, including Ann Moore, a representative of CEAL, were given an opportunity to comment. Some approved, some were opposed. Following the hearing a lengthy letter to Secretary Norton from Mayor Hussey responded, again, to specific concerns that had been expressed at the hearing. The concerns regarding water contamination, traffic, trash, odors, and safety raised repeatedly by appellant and members of the public were addressed at the meeting and thoroughly, again, in Hussey's letter.
Following the second public hearing, CEAL petitioned DEQ for an "adjudicatory hearing" and permission to intervene as a party in further permit number P-0120 proceedings. The petition avers that CEAL's membership includes residents and owners of the property near the application site, as well as individuals concerned with environmental quality. The alleged concerns are the same raised in both prior public hearings. DEQ denied CEAL's petition primarily because the issues raised therein were not new. Additionally it noted that "sworn testimony" from an adjudicatory hearing would be of insufficient assistance to DEQ to warrant "such an extensive hearing."
CEAL has assigned the following errors:[3]
(1) that the criteria and procedures for determination of site suitability are "informal" and have not been adopted in accordance with the Louisiana Administrative Procedure Act, LSA-R.S. 49:950 through 970;
(2) that DEQ has failed to "implement the requirements" of Save Ourselves, Inc. v. Louisiana Environmental Control Commission, 452 So.2d 1152 (La.1984), with regard to its solid waste permitting plan; and
(3) that, as a factual matter, the site is unacceptable.
This court has held, in similar circumstances, that the Administrative Procedure Act (APA) is inapplicable to DEQ proceedings. In Blackett v. Department of Environmental Quality, 506 So.2d 749, 753 (La.App. 1st Cir.1987), we held that the APA does not create rights to a hearing but rather prescribes the procedure to be followed if such rights, independently, exist. The statutory scheme under which DEQ functions does not grant CEAL a right to a hearing.[4] Nevertheless, two hearings were held.
*713 In permit application proceedings such as these, any member of the public may request a hearing which includes the opportunity to testify. Such a request should set forth specific "comments in support of or objection to the issuance of [the] permit." Rule 6.4.1(E)(6)(a)(2), Louisiana Solid Waste Rules and Regulations. These comments will determine whether DEQ exercises its discretion to grant or deny a hearing. Rule 6.4.1(e)(6)(b). The use of this procedure is not in violation of the APA, as appellant contends, but rather, follows the regulations specific to DEQ.
CEAL also assigns as error a failure to follow its perceived mandate of Save Ourselves, Inc. v. Louisiana Environmental Control Commission as to DEQ's solid waste permitting procedure. It should be noted that Save Ourselves, Inc. involved the disposal of hazardous waste and a determination whether the standards of the Hazardous Waste Management Plan had been properly followed by DEQ's predecessor, the Environmental Control Commission. The court in Save Ourselves, Inc. held that from the record it was unable to determine whether these standards were followed.
In Save Ourselves, Inc. v. Louisiana Environmental Control Commission, 452 So.2d 1152, 1160 (La.1984), the court held:
From the present record we cannot tell whether the agency performed its duty to see that the environment would be protected to the fullest extent possible consistent with the health, safety and welfare of the people. The record is silent on whether the agency considered alternate projects, alternate sites or mitigation measures, or whether it made any attempt to quantify environmental costs and weigh them against social and economic benefits of the project. From our review it appears that the agency may have erred by assuming that its duty was to adhere only to its own regulations rather than to the constitutional and statutory mandates.
Our review of this record, including the voluminous correspondence between representatives of the city and firms engaged by the city to assist in the permit application, and DEQ, as well as a two-volume revised permit application submitted by the city in April of 1986 that succinctly follows the permit application provisions of the Louisiana Solid Waste Rules and Regulations, clearly shows the facts here are inapposite to Save Ourselves, Inc. Additionally, the record reflects consideration given by DEQ to the myriad environmental concerns of the landfill permit application as well as public concerns. DEQ carefully struck a considered balance between these concerns. Factually, the positive factors supporting this site clearly outweighed the negative ones. No one questioned the geological superiority this site possessed because of its ideal clay subsoil. Its decision to grant this permit was not arbitrary and capricious. Its finding that the Woolworth Road site was acceptable does not constitute manifest error.
Further, though not raised in its assignments of error, CEAL contends the denial of an adjudicatory hearing violates the Due Process clause of Section 1 of the Fourteenth Amendment of the United States Constitution. What process is due depends upon the particulars involved. Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976).
Mathews v. Eldridge was a suit brought following termination of disability benefits under 42 U.S.C. § 423, by the Social Security Administration. The claimant, Eldridge, contended that under Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (which established a right to an evidentiary hearing prior to a welfare benefits termination), the termination of his disability benefits without an evidentiary hearing violated due process. The court held that due process did not compel an evidentiary hearing. It noted the "elaborate character" of the existing administrative procedures. Mathews v. Eldridge, 96 S.Ct. at 905. Additionally, the court articulated guidelines by which to determine whether an agency's procedure comports with due process:
First, the private interest that will be affected by the official action; second, *714 the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
Mathews v. Eldridge, 96 S.Ct. at 903.
The circumstances at bar are distinct from those in Mathews v. Eldridge because the permitting of a solid waste disposal facility involves more than a single private interest. There is the interest of the people of Shreveport in their pressing need for a facility that conforms to DEQ standards. Their current disposal facility was ordered closed by DEQ and is considered a health and environmental hazard. There is, similarly, the interest of certain parish residents and the residents of surrounding municipalities who will be participating in the use of the landfill. There is the interest represented by CEAL. CEAL opposes the location of the landfill near the residences and property of certain of its members.
Most importantly, there is the overriding interest of the public in regulating a necessary evil. DEQ, by mandate, represents this public interest. La. Const. art. IX, § 1, and LSA-R.S. 30:1061. The private interests involved herein are polarized. DEQ's role is not that of an impartial third party arbitrator for these conflicting interests, but rather a representative of the public. Save Ourselves, Inc. v. Louisiana Environmental Control Commission, 452 So. 2d 1152, 1156 (La.1984).
The Mathews v. Eldridge guidelines prescribe a means by which the competing interests involved in that case (the disability claimant's private interest and the public's interest in avoiding the fiscal and administrative burdens of any additional procedures) could be appropriately balanced.
The public interest that is protected by DEQ involves much more than the public fisc. The unique position occupied by DEQ requires that it be given discretion to balance competing private interests and the interest of the public in making its determinations. We believe that its exercise of this discretion in holding two public hearings and denying a third, adjudicatory hearing, constituted all the process that under these circumstances was due.[5]
CEAL asserts that a lack of criteria by which permit applications are to be judged minimizes the substantive value of DEQ public hearings.[6] The opportunity to be heard, CEAL argues, without these criteria is constitutionally insufficient. We note that the Louisiana Solid Waste Rules and Regulations provide detailed criteria by which to review permit applications as well as to regulate existing facilities. These rules provided ample notice of the standards against which the Shreveport application would be judged.
For reasons expressed hereinabove, the decision of Patricia L. Norton, secretary of the Department of Environmental Quality, granting permit number P-0120 to the City of Shreveport is affirmed. Costs are assessed to appellant.
AFFIRMED.
NOTES
[1] The powers and duties formerly granted the Environmental Control Commission have been subsumed by DEQ and, more specifically, vested with its Secretary. LSA-R.S. 30:1062.
[2] A hearing was held April, 1985, before Ms. Norton in the Shreveport City Council Chambers, Shreveport, Louisiana; a second hearing was conducted June 24, 1986, again in Shreveport by DEQ officials, including the secretary and the administrator of DEQ's Solid Waste Division. Members of the public were made aware of the scheduled meeting by notices published in the Shreveport Journal and the Baton Rouge State Times, which included information regarding availability to the public of copies of the permit application as well as a procedure for submission of written comments to DEQ.
[3] It is not the denial of the adjudicatory hearing but rather the granting of the permit which constitutes the "final decision or order" within the meaning of LSA-R.S. 30:1072 which has prompted this appeal.
[4] Rules 6.3.5 and 6.4.1(E), Louisiana Solid Waste Rules and Regulations, provide that public hearings with regard to permitting new or existing facilities are at the discretion of the assistant secretary, Office of Solid and Hazardous Waste. These rules were promulgated as directed by LSA-R.S. 30:1121 through 1125, Louisiana Waste Management and Rescource Recovery Law, more specifically, LSA-R.S. 30:1124(B).

Additional authority for the promulgation of these rules can be found in LSA-R.S. 30:1051 through 1080, Louisiana Environmental Quality Act, more specifically, at LSA-R.S. 30:1070.
[5] Additionally, it is noted that specific requirements in the permit itself reveal that some of the concerns voiced at these two hearings were heard, considered, and addressed.
[6] DEQ Secretary Norton's Memorandum dated October 31, 1984, CEAL asserts, underscores the importance of public input but provides no "evaluation criteria." It is not clear whether CEAL suggests that due process requires criteria by which to evaluate the permit application or the public comment. The former suggestion is discussed hereinabove. The latter does not merit comment.