SHORTESS, Judge.
An adjudicatory hearing was held pursuant to a request from Sixty Acres, Inc. (respondent) after the Department of Environmental Quality (DEQ) proposed a penalty for alleged violations at a landfill site in *576 St. Charles Parish. LSA-R.S. 30:2024(A). This appeal is from the final decision of the Secretary of DEQ after a hearing held on September 10, 1987, and is before this court by operation of LSA-R.S. 30:2024(C). See also In the Matter of BASF Corporation, Chemical Division, 533 So.2d 971 (La.App. 1st Cir.1988).
The Proposed Penalty Notice was issued to respondent following a DEQ inspection conducted on December 5, 1986, which cited seven violations of a compliance order of August 15, 1986, under which respondent was allowed to operate as a “Construction/Demolition Debris Site.” The seven cited violations are as follows:
1. Failure to limit [the] volume of paper to a maximum of [5%].
2. Failure to prevent the disposal of unspecified waste, i.e., allowing the disposal of non-construction/demolition debris and allowing the disposal of commercial waste.
3. Failure to prevent the disposal of hazardous waste (auto batteries) and domestic/putrescible waste.
4. Failure to prevent the disposal of waste in standing water (swamp).
5. Failure to control/prevent litter.
6. Failure to apply interim cover every 80 loads or every 2 months.
7. Failure to maintain adequate records.
Respondent operates a site in St. Charles Parish previously leased to Disposal Service, Inc. (DSI) for purposes of a solid waste (landfill) facility. DSI was issued a closure order on May 30, 1985, pursuant to Rule 4.3(B) of the Louisiana Solid Waste Rules and Regulations (hereinafter referred to as “Rules”).[1]
On October 2, 1985, respondent refused to renew its lease with DSI, apparently because of DSI’s operations at the site and the closure order from DEQ. Respondent submitted its own plan for closure of the site, requesting that the site be allowed to remain open under its operation to defray closure costs. A DEQ order was issued August 15, 1986, adopting respondent’s proposed closure plan, which provided for continued operation of the site for the limited purpose of disposal of the following:
1. Non-hazardous construction and demolition debris generally considered not to be water soluble, including steel, concrete, brick, asphalt, roofing material, lumber, blasting sand, plaster, stone, and a maximum of 5% (percent) by volume of paper waste associated with such construction and demolition debris.
2. Woodwaste as defined in Section 3.0 of the Solid Waste Rules and Regulations.
3. Tree limbs, leaves, stumps and other wastes resulting from land clearing.
The plan further, in part, provided:
1. Disposal shall be limited to those wastes listed in [above language].
2. The disposal of liquid waste, volatile waste, hazardous waste, flammable waste, infectious waste, domestic wastes, and putrescible waste shall be strictly prohibited and prevented.
3. The open burning of any waste for volume reduction shall be prohibited and prevented. Should any fire start, procedures will be initiated immediately to control and to extinguish it.
4. No solid waste shall be deposited in standing water.
5. Unapproved salvaging shall be prohibited and prevented.
6. Scavenging shall be prevented.
7. Airborne litter should not be a problem as only a minimum of paper waste will be received. Litter will be controlled through regular applica *577 tion of cover material as specified below.
8. At a minimum, the waste materials shall be spread, compacted and covered with suitable cover every 80 loads or every two months, whichever occurs first.
9. Disposal of waste shall be performed in stages such that one area of the site is filled and properly closed prior to starting an adjacent area.
Consistent with LSA-R.S. 30:2025(E),[2] the closure order issued respondent provided that a violation could result in civil penalties not to exceed $25,000.00 for each day of non-compliance. The proposed penalty assessment amounted to $10,000.00 for the seven violations cited therein, but provided that upon timely request by respondent for a hearing, a de novo determination of appropriate enforcement action, including the assessment of civil penalties, would be made. Respondent requested such hearing, which resulted in a finding of the following violations:
1. The actions of the Respondent were in violation of the August 15, 1986 Order of the Department in that the Respondent:
a. disposed of other than non-hazardous construction and demolition debris;
b. disposed of hazardous and domestic waste;
c. deposited solid waste in standing water;
d. failed to provide adequate cover material; and
e. failed to maintain adequate documentation of the waste accepted.
2. Respondent also violated:
a.Section 5.1.6 of the Louisiana Solid Waste Rules and Regulations in that Respondent failed to dispose of solid waste in accordance with said regulations, and at a facility permitted to receive such waste;
b. Section 5.1.10 of the Louisiana Solid Waste Rules and Regulations in that Respondent failed to report to the Department the unauthorized dumping or placing of solid waste into and/or on the water or land of the state in contravention of said regulations and the Act;
c. Section 8.1 of the Louisiana Solid Waste Rules and Regulations in that the Respondent failed to comply with said regulations and the provisions of the departmental Order issued thereunder on August 15, 1986; and
d. Section 1125 of the Act in that Respondent did dispose of solid waste in violation of the Act, regulations of the Secretary and an Order issued by the Secretary.
The de novo penalty determination was as follows:
1. For allowing the disposal of other than authorized waste at Respondent’s facility. $ 6,000.00
2. Failure to prevent the disposal of waste in standing water. 2,000.00
3. Failure to apply adequate interim cover. 2,000.00
4. Failure to maintain adequate records and documentation of waste accepted. 2,000.00
5. Failure to report dumping of [unauthorized] solid waste. 8,000.00
6. Cost of enforcement. 999.53
TOTAL PENALTY $20,999.53
Respondent appeals, asserting four assignments of error: that the hearing officer erred in finding the site debris consisted of 50% paper and, alternatively, that he *578 failed “to consider mitigating circumstances”; that he erred in determining inadequate interim cover was provided; that he erred in his “conclusions of law”; and that he erred in assessing a “substantial penalty” in light of respondent’s economic resources, the absence of any previous violations, the absence of any evidence of “specific monetary gain” or of risk to human health or property, and respondent’s effort to “mitigate the damages at substantial cost.”
There is ample evidence in this record to support the finding that exposed waste at the site consisted of at least 50% paper products in direct violation of the closure order. The “mitigating factors” respondent asserts should have been considered are simply that its employees at the site, following a telephone discussion with some unidentified person at DEQ, accepted cardboard products under the mistaken belief that such was not “paper” within the meaning of the closure order. The hearing officer was unimpressed with this testimony, particularly in view of the fact that the cardboard found on the site was not associated with construction or demolition debris. The closure order provided that a maximum of 5% of the debris could be paper if associated with construction or demolition debris, and that only the types of waste described on the closure order could be accepted.
There is likewise ample evidence to support the finding of exposed waste on the edges of the site, some of which had migrated into wetlands contiguous to the site. DEQ investigator Raul Busquet testified that this encroachment on wetlands, in his opinion, was a serious violation. As regards this violation, we observe that our Legislature has declared this state’s waters to be among its most important natural resources, declaring its protection and safeguard of “vital concern” to its people. See LSA-R.S. 30:2072.
Respondent asserts in assignment of error number three that the hearing officer “erred in his conclusions of law,” but in addressing this assignment of error argues that there was not sufficient evidence to support his findings of fact, more specifically, the finding that hazardous and domestic waste were disposed at the site and that waste was found in standing water. These findings of fact cannot be disturbed by this court absent manifest error, which we do not find. See Office of Environmental Affairs v. McWhorter and Associates, 449 So.2d 1062, 1067 (La.App. 1st Cir.1984).
DEQ inspector Busquet testified that there were at least six automobile batteries on the site, as well as waste clearly not associated with construction or demolition.[3] Respondent offered testimony that the batteries were to be taken off the site at some later time but did not deny that they had been dumped at its site. Respondent’s employees testified that often such items are concealed in a truckload of debris and not found until the load is spread. The ultimate responsibility, however, in a situation where a site is operating under an order which specifies the type of debris it may accept, must be upon the owner and operator of the site.
Lastly, respondent asserts the penalty assessed was excessive in light of its economic resources, the history of no previous violations, the lack of evidence of specific monetary gain, the lack of serious risk to human health or property, and the fact that a substantial sum was expended (after the penalty assessment) to close the site. Initially, we note that respondent’s assertion of error in the consideration of gross revenues as opposed to net revenues is without merit. See In the Matter of McGowan, 533 So.2d 999, 1004 (La.App. 1st Cir.1988), writ denied, 537 So.2d 1168 (1989). Additionally, some risk to human health was foreseeable. Busquet’s testimony revealed that a fire occurred on the site under DSI’s management which caused a serious traffic accident on a nearby highway, and that the excess paper, uncovered, at the site risked another such occurrence.
*579 Also, Busquet’s testimony — that the failure to provide adequate interim cover resulted in monetary gain to the extent of the savings realized from the failure to purchase sufficient cover material — is simply an observation of the obvious. With regard to the lack of previous violations, we observe that these violations were discovered only some four months after respondent began operating the site, and that the only previous official inspection was made sixteen days after such operation had begun.
We also believe sufficient consideration was given to respondent’s efforts to mitigate the damages. While respondent’s efforts after the December 5, 1986, inspection are commendable, we must note that its employees permitted violations to occur after the August 15, 1986, order, as Busquet’s photographs so vividly show. Respondent’s lax procedures permitted gross violations of the order which permitted it to operate. Solid waste disposal is a necessary evil, in which there is an overriding interest of the public in regulating. In the Matter of Shreveport Sanitary and Industrial Landfill, 521 So.2d 710, 714 (La. App. 1st Cir.1988). DEQ represents this interest, by mandate, Id. Owners and operators of these disposal sites must act responsibly in ensuring compliance with these regulations. Even more importantly, this last assignment of error addresses only some of the criteria enumerated at LSA-R.S. 30:1073(E)(3)(a)(iii) (redesignated by House Concurrent Resolution No. 247 of 1987, see now LSA-R.S. 30:2025(E)(3)(a)). All the factors enumerated therein are to be considered in arriving at a penalty assessment. The hearing officer considered these criteria and, we believe, was not arbitrary or capricious in his assessment.
For the foregoing reasons, the decision appealed from is affirmed at respondent’s costs.
AFFIRMED.

. The Louisiana Solid Waste Rules and Regulations were adopted pursuant to the mandate of Act 449 of 1979 of the Louisiana Legislature. Rule 4.3 provides:
All solid waste sites will be inventoried and classified in accordance with provisions of Section 6.5 of these regulations. Classifications will require the following actions to be completed prior to January 20, 1986:
A. Upgrade to meet the standards set forth in Section 7.3 of these regulations, or,
B. Close in accordance with requirements of Section 6.5.3 of these regulations.

. At the time the order was issued, the provisions of LSA-R.S. 30:2025(E) were found at LSA-R.S. 30:1073(E), redesignated by House Concurrent Resolution No. 247 of 1987. LSA-R.S. 30:2025(E)(1) provides:
(1) Any person found to be in violation of any requirement of this Subtitle may be liable for a civil penalty to be assessed by the commission, the secretary, the assistant secretary, or the court of not more than one million dollars or the cost of any cleanup made necessary by such violation and a penalty of not more than twenty-five thousand dollars for each day of violation and may be subject to the revocation or suspension of any permit, license, or variance which has been issued to said person. Any person found to be in violation of this Subtitle shall be liable for legal interest from the date of the assessment of a civil penalty until paid.

. Busquet testified that there were automobile engine and body parts, several portable toilets, and other such articles on the site at the time of his December 5, 1986, inspection.