|2FOIL, Judge.
This appeal challenges an administrative decision denying appellant’s request for a modified permit to allow it to stockpile oyster shells at a seafood processing facility. After a thorough review, of the record, we affirm.
FACTUAL AND PROCEDURAL BACKGROUND
Southern Shell Fish Company, Inc. operates a seafood processing plant in Harvey, Louisiana. The facility, situated along the Harvey Canal, is located in a primarily indus *1322 trial and commercial area. On March 23, 1994, a complaint was lodged with Mr. Charles Conrad, the administrator of the commercial seafood inspection program for the Office of Public Health, Department of Health and Hospitals (OPH), concerning an odor and fly problem at the Southern Shell facility. Mr. Charles Johnson, a seafood sanitation specialist, investigated the complaint and found what he described to be a tremendous fly infestation and odor problem caused by a deposit of oyster shells at the factory. Southern Shell hired companies to spray for flies, and had the offensive shells removed from the plant.
On April 20,1994, Guy Brupbacher, a compliance officer for OPH, inspected the facility and found that the overall condition had improved. He advised Southern Shell’s owner, Mr. Skrmetta, that all shells generated by the plant’s operation would have to be removed daily. Mr. Skrmetta was told that prior to the issuance of a new permit, he would have to provide the agency with a written agreement that all shells would be removed daily to a specified, remote area where they would pose no public hazard or nuisance. The owner agreed to the condition, and a permit containing the daily removal requirement was issued to Southern Shell.
Thereafter, Southern Shell did remove the oyster shells on a daily basis to a vacant lot located two miles away from its facility. In December of 1994, Southern Shell requested that OPH modify its permit to eliminate the daily removal requirement and allow it to store oyster shells on site until they could be sold. The request was denied by Mr. Conrad, who noted that Southern Shell’s permit was issued under the condition that it comply with the Louisiana ^Sanitary Code, and as a condition of the granting of its permit to operate, Southern Shell agreed to haul the shells away from its facility. Mr. Conrad further noted that Southern Shell’s prior practice of stockpiling shells at its plant site resulted in a health hazard and a serious nuisance to the business and residential community surrounding the plant earlier that year.
Southern Shell appealed OPH’s decision and a hearing was held before an administrative law judge (ALJ). Southern Shell urged that the fly and odor problem in March of 1994 resulted from a one time occurrence, and contended that because the situation had been remedied, it should be allowed to resume stockpiling oyster shells at the plant site.
The evidence at the hearing can be summarized as follows: Mr. Dennis Skrmetta, Southern Shell’s manager, described the oyster canning process. He revealed that boats come into the Southern Shell facility and unload oysters directly off of the boat. The oysters are placed into a washer which washes off the bulk of the mud, grit and sand from the shells. The oysters are then conveyed into the plant and are loaded into a steam cooker, where they remain for 10 minutes. The heat kills the bacteria and causes the shells to open. The steamers are unloaded and the oysters are. conveyed to a machine that shucks the oysters. The oyster meat is brought into the plant where it is put into cans, and the shells are conveyed out of the factory to a large hopper. Prior to the daily removal requirement, Southern Shell would store the shells on site until they could be sold.
The plant’s owner and manager (the Skrmettas) claimed that the odor and fly problem prompting OPH’s investigation was caused by an unusually large amount of mussels having been attached to the oyster shells. These mussels were mixed with the grit (pieces of the oyster shells) and mud and sand that were removed from the shells during the washing process. At that time, Southern Shell was also storing the grit mixture at its facility. The Skrmettas urged that following the investigation, the oyster grit was dug out and removed and the situation was completely remedied.
pThe evidence showed, and the Skrmettas admitted, that after shucking, some oyster meat remains attached to the shells, and goes out of the factory with the shells. This fact served as the basis for OPH’s classification of the shells as “waste” or “offal” and therefore subject them to the Sanitation Code’s garbage removal requirements. Mr. Conrad explained that even though the meat is cooked, it will decompose, give off odors and attract flies. He stated that although the amount of *1323 meat and juice remaining after the shucking process may be small, when considering the huge volumes of shells a facility like Southern Shell processes, stockpiling the shells can have a serious sanitation effect in terms of fly infestation and odors. Mr. Conrad and other OPH officials attested that OPH requires all seafood processing facilities operating throughout the state to remove shells on a daily basis.
Several witnesses who work and reside near the Southern Shell plant testified regarding the fly and odor problem at the facility. Two individuals wrote letters to OPH asking that Southern Shell be prohibited from resuming its stockpiling activities at the plant.
At the conclusion of the hearing, the ALJ denied Southern Shell’s request for a permit modification. The ALJ found that the provisions of the Sanitation Code regulating waste removal applied to the oyster shells, and found OPH’s regulation to be a reasonable one under all of the circumstances.
Southern Shell filed a petition for review of the administrative decision in the 19th Judicial District Court. The trial court affirmed the ALJ’s decision. This appeal followed.
DISCUSSION
Southern Shell attacks OPH’s refusal to modify its permit on a number of grounds. First, it contends that the agency’s decision should be vacated because § 957 of the Louisiana Administrative Procedure Act (APA), which governs examination of evidence by an agency, was not followed. La. R.S. 49:957 states that in an adjudication proceeding, where a majority of the officials of the agency who are to render the final decision have not heard the case or read the record, the decision, if adverse to the non-agency party, shall | ¡¡not be made until the proposed order is served on the parties and the party adversely affected is given the opportunity to file exceptions and present briefs and oral argument to the officials who are to render the decision. Southern Shell argues that the agency decision could not be issued in this case until it was given the opportunity to except thereto, file a brief and present oral argument to the final decision makers, and therefore, because it was not given this opportunity, the decision of the agency was never a valid “final” one.
The record reflects that the agency adjudication in this case was conducted in accordance with the Sanitary Code of the State of Louisiana, adopted pursuant to La. R.S. 40:4, which sets forth elaborate adjudication procedures therein. An ALJ presides over the hearing, at which the non-agency party is permitted to present evidence, cross examine agency representatives, and make a closing statement. Sanitary Code 1:007-13-17. The ALJ is required to render a written decision and proposed order, which must be forwarded to the State Health Officer and the Secretary of DHH, who shall approve or disapprove of the order. Sanitary Code 1:007-18 and 19. The Secretary of DHH is given the option of, among other things, approving the decision, remanding the matter; requiring a transcript of the proceedings and overruling the decision, holding a new hearing, or rendering another decision. Sanitary Code 1:007-19.
Southern Shell does not dispute that the above procedural safeguards were complied with in this case. Instead, it posits that § 957 of the APA applies to proceedings held pursuant to the Sanitary Code because the Sanitary Code does not contain a similar procedural safeguard. It relies on § 1:007-22 of the Sanitary Code, which states that “[ijnsofar as these regulations are incomplete or may inadvertently conflict with the Administrative Procedures Act, that Act (R.S. 49:951-958) shall control, where it is, by its terms, applicable.” Southern Shell insists that because the Sanitary Code does not contain a provision similar to § 957 of the APA, it is in conflict with the APA, and the APA controls by virtue of § 1:007-22 of the Sanitary Code. Alternatively, it states that because the Sanitary Code does not contain a safeguard equivalent to § 957,16the Sanitary Code is “incomplete,” making the APA applicable under § 1:007-22 of the Sanitary Code.
We reject this argument. The Sanitary Code contains adequate procedural safeguards to protect citizens from arbitrary agency action. There is no “inadvertent conflict” between the adjudication requirements of the APA and the Sanitary Code to trigger *1324 the applicability of the APA under § 1:007-22 of the Sanitary Code. Further, the Sanitary Code’s adjudication provisions are complete, and do not require supplementation by the APA. Therefore, we find that the Sanitary Code controls agency review of a decision of the ALJ, and nothing contained therein prevents an order from becoming final without giving the non-agency party the opportunity to be heard by the officials rendering the final decision.
Next, Southern Shell contends that OPH exceeded the scope of its statutory authority by requiring daily removal of shells from its facility, contending that OPH should have followed administrative enforcement procedures after discovering the Sanitary Code violations at the plant. This argument plainly lacks merit. Pursuant to La. R.S. 40:4, OPH is empowered to prepare, promulgate and enforce all rules and regulations embodied within the Sanitary Code covering all matters within OPH’s jurisdiction as set forth in La. R.S. 40:5(3). Under La. R.S. 40:5, OPH is vested with exclusive jurisdiction to enforce the Sanitary Code for the improvement and amelioration of the hygienic and sanitary conditions of the entire state. OPH also has the exclusive power to provide for the issuance of health permits. La. R.S. 40:5(7) and (19). By requiring that Southern Shell remove shells from its facility on a daily basis as a condition to issuing a permit to Southern Shell, OPH was exercising its statutory authority to enforce the provisions of the Sanitary Code. The record reflects that OPH routinely requires seafood processing facilities to remove shells from the facility on a daily basis as a condition for their health permits. We conclude that OPH was acting within the scope of its statutory authority in placing the same condition on Southern Shell’s permit.
|7Southern Shell’s third challenge is directed to the ALJ’s decision that the provisions of the Sanitary Code governing garbage removal apply to Southern Shell. Chapter 6 of the Sanitary Code, which regulates food processing, prohibits the accumulation of litter, waste or refuse, and mandates the removal of trash as often as necessary, but not less than twice weekly. 6:020. It also regulates the removal of “offal,” which is defined as “waste parts, especially of a butchered animal, including but not limited to bones, cartilage, fatty tissue and gristle.” 6:001.
Southern Shell contends that the Sanitary Code cannot be applied to the oyster shells deposited at its facility because it introduced evidence showing that it has sold the processed oyster shells in the past. It urges that because the shells have an economic value, they cannot be properly characterized as “waste,” “offal,” “refuse” or “litter” and therefore cannot be ordered removed under the Sanitary Code provisions regulating garbage.
The ALJ dismissed this argument, noting that the testimony established that after processing, small amounts of meat and juice remained in the oyster shells. Although the amount may be small, the witnesses testified, when considering the volume of shells that are accumulated at a facility such as Southern Shell’s, foul odors and fly attraction will necessarily result.
Considering the record, we find no error in the ALJ’s conclusion that the oyster shells are properly classified as offal or waste, subjecting the shells to thé provisions of the Sanitary Code regulating garbage removal.
Southern Shell’s remaining assignments of error are directed to the ALJ’s conclusion that the daily removal requirement is a reasonable one under the circumstances of this case. This factual determination is governed by the manifest error standard of review. Matter of Insulation Technologies, Inc., 95-1184, pp. 5-6 (La. App. 1 Cir. 2/23/96); 669 So.2d 1343, 1347, writ denied, 96-0749 (La. 5/3/96); 672 So.2d 692. Under the manifest error standard of review, this court is empowered to reverse a factual finding only if we find from the record that a reasonable basis does not exist for the finding, and the record establishes that the finding is clearly wrong. Stobart v. State through Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). We conclude that the ALJ’s decision is a reasonable one in view of the record as a whole, and we decline to disturb it.
*1325 CONCLUSION
Based on the foregoing, the judgment appealed from is affirmed. All costs of this appeal are assessed to appellant.
AFFIRMED.