804 So.2d 673 (2001)
MULTI-CARE, INC.
v.
STATE OF LOUISIANA, DEPARTMENT OF HEALTH AND HOSPITALS.
No. 2000 CA 2001.
Court of Appeal of Louisiana, First Circuit.
November 9, 2001.
Rehearing Denied December 13, 2001.
*674 Gregory E. Bodin, Baton Rouge, LA, for plaintiff/appellee, Multi-Care, Inc.
Nancy L. Kelly, Baton Rouge, LA, for defendant/appellant, State of Louisiana, Department of Health and Hospitals.
Before FITZSIMMONS, WEIMER and DOWNING, JJ.
DOWNING, Judge.
The Louisiana Department of Health and Hospitals, hereinafter "DHH," appeals an adverse judgment rendered by the trial court on administrative review pursuant to La.R.S. 49:964. Through administrative procedure, DHH attempted to require Multi-Care, Inc., hereinafter "Multi-Care," to reimburse residents for expenses for certain personal items and clothing at two intermediate care facilities for the mentally retarded. DHH alleges Multi-Care failed to prove it did not misuse its residents' funds. The trial court disagreed and DHH appealed. For reasons stated, we affirm.

FACTS AND PROCEDURAL HISTORY
In 1996, DHH's contract auditors audited the records of Robinswood School and Robinswood Community Home, two related homes owned and operated by Multi-Care. These facilities offer homes and training for mentally retarded people. The audits covered the fiscal years from July 1, 1993 through June 30, 1997. Most of the issues raised by the audits were resolved informally. However, DHH concluded Multi-Care mismanaged client funds in three areas. DHH ordered Multi-Care to reimburse its clients for the amounts spent on clothing, personal grooming and haircuts. On administrative appeal, the DHH administrative law judge (hereinafter "ALJ") affirmed the decision of DHH and ordered Multi-Care to make the specified reimbursements.
Multi-Care then filed for judicial review. After reviewing the record and hearing oral argument, the trial court reversed the decision of the ALJ and vacated the order for reimbursement of client funds. DHH filed this appeal asserting the following assignments of error:
1) The district court erred in reversing the administrative court's judgment on the ground that DHH violated provisions of the Administrative Procedure Act.
2) The district court erred in finding that the DHH audit findings and sanctions applied to Robinswood School and Robinswood Community Home were not based on provisions of the ICF/MR Standards for Payment and the ICF/MR Licensing Manual, promulgated regulations in effect at the time in question.
3) The district court erred in finding that Robinswood School and Robinswood Community Home had procedures in place to ensure the proper handling of client personal fund accounts.

DISCUSSION

Standard of Review
Judicial review is a multifaceted function involving several categories: statutory or constitutional review, procedural review, substantive review, factual review, and fact finding. The Louisiana Administrative Procedure Act, La.R.S. 49:964 G, provides that the court may reverse or modify the decision if substantial rights of the appellant were prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions;

*675 (2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(6) Not supported and sustainable by a preponderance of evidence as determined by the reviewing court. In the application of this rule, the court shall make its own determination and conclusions of fact by a preponderance of evidence based upon its own evaluation of the record reviewed in its entirety upon judicial review. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues.
We note that Acts 1997, No. 128, § 1, effective June 12, 1997, amended paragraph G(6) to make the trial court a fact finder who weighs the evidence and makes its own conclusions of fact by preponderance of the evidence. Before this amendment, the trial court reviewed the ALJ's factual findings for manifest error.
Accordingly, while we do not defer to the trial court's legal conclusions, see State, Louisiana Riverboat Gaming Commission v. Louisiana State Police Riverboat Gaming Enforcement Division, 95-2355, p. 5 (La.App. 1 Cir. 8/21/96), 694 So.2d 316, 319, we do defer to the trial court's factual determinations and use a manifest error standard of review where the legislature has empowered it with the function of fact finding. See Virgil v. American Guarantee and Liability Insurance Company, 507 So.2d 825, 826 (La. 1987). In Virgil, the Louisiana Supreme Court observed that the manifest error standard of review applies to the trial court's factual findings even when the evidence before it consists solely of written reports, records and depositions. Id. The supreme court discussed the allocation of fact finding in Louisiana's three-tiered court system as follows:[1]
Louisiana's three-tiered court system allocates the fact finding function to the trial courts. Because of that allocation of function (as well as the trial court's normal procedure of evaluating live witnesses), great deference is accorded to the trial court's factual findings, both express and implicit, and reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on appellate review of the trial court's judgment.
Id.

Unpromulgated Regulations
DHH does not dispute that its auditors cited guidelines that had not been promulgated as authority for their findings. It asserts, however, that its decision to sanction Multi-Care was supported by rules and regulations in force during the audit period. DHH argues that the improper *676 citations should in no way be a factor in this case. We agree that any sanction of Multi-Care should be based on rules and regulations in effect during the audit period.
Louisiana Revised Statute 49:954 provides that no rule shall be effective, nor may it be enforced, unless it was adopted in substantial compliance with the provisions of the Louisiana Administrative Procedure Act. It further states that no rule shall be effective or enforced unless: a) it was properly filed with the State Register; b) a report on the rule was submitted to the legislature in accordance with La.R.S. 49:968, and c) the approved economic and fiscal impact statements were filed with the Department of the State Register and published in the Louisiana Register. An administrative rule adopted in accordance with the requirements of the Louisiana Administrative Procedure Act becomes effective upon its publication in the Louisiana Register. La.R.S. 49:954.
Insofar as the ALJ relied on unpromulgated rules and regulations, it committed error. DHH's first assignment of error is without merit.

Compliance with Regulations
Even so, DHH argues that existing, properly promulgated rules and regulations justified its imposition of sanctions on Multi-Care. After reviewing the record and hearing oral argument, however, the trial court concluded that DHH's decisions to impose sanctions on Multi-Care were not supported by regulations in force during the audit period. We agree.
When a party invokes the right to a hearing to review the assessment of penalties by an agency for violations of regulations, it is incumbent on the agency to prove by competent evidence the facts upon which the assessment is based. In re Insulation Technologies, Inc., 95-1184, p. 6 (La.App. 1 Cir. 2/23/96), 669 So.2d 1343, 1348. Because violations of agency regulations can result in the assessment of civil penalties, as in the instant case, the regulations are penal in nature and must be strictly construed. Insulation Technologies, Inc., 95-1184 at p. 9, 669 So.2d at 1350.
Here, DHH offers no facts or proof, other than a negative inference suggested by auditors, that Multi-Care in any way mismanaged or misappropriated client funds. No auditor testified. But DHH employees testified that no one, auditor or DHH employee, talked to any Multi-Care officer, social worker, technician, other employee or client to question whether Multi-Care misused client funds. The auditors and DHH drew their conclusions from the written records. In her opinion, the ALJ writes, "Perhaps, some or all of the debits to residents' personal client funds are justified. However, the method to ensure proper allocation and that the residents understood their rights would be written documentation."
DHH, however, points to no specific law, regulation, rule, policy or procedure that Multi-Care allegedly violated in failing to keep this documentation, and we can find none. Instead, DHH cites rules and regulations requiring Multi-Care to ensure its clients have adequate clothing, personal hygiene items and haircuts.[2] DHH makes *677 no allegation that Multi-Care in any way thwarted, obstructed or failed to cooperate with the audit. Yet, DHH attempts to penalize Multi-Care because Multi-Care cannot prove in the manner requested by the auditors that it did not misuse clients' funds.
DHH argues in support of its position that its auditors must have some documentation showing the clients were informed of Multi-Care's duty to provide certain items and that the client chose to purchase the item rather than accept what the facility offered. Without this documentation, DHH argues, the auditors have no proof that a facility has not mishandled the clients' personal fund accounts. DHH argues that Multi-Care knew or should have known DHH would perform an audit of its facilities and that such audits rely solely on written documentation. DHH then argues that it gave Multi-Care every opportunity to produce sufficient documentation to disprove DHH's allegations against them. Accordingly, DHH asserts it had no choice but to sanction Multi-Care when it failed to prove compliance with the auditor's recommendations. In essence, DHH attempts to convert an auditor's request for compliance information into an enforceable regulation, even though unpromulgated.
Multi-Care does not dispute that it owes a duty to the clients in its facilities to provide them with basic items of clothing, personal hygiene items and haircuts. It recognizes its duty to protect client funds and to individually maintain current records reflecting all transactions involving clients' personal funds. Multi-Care acknowledges that it must obtain its clients' permission before spending their funds for personal items of their choosing.
Multi-Care offered evidence at the administrative hearing, contained in the record of this matter, showing that it complied with its duties. In fact, undisputed evidence shows that when a client wanted or needed an item of clothing, a Mentally Retarded Training Technician would send a requisition note to a social worker. The higher level clients would approach the social worker themselves. The social worker would then categorize whether requested items were "wants" or "needs." If a requested item was not a "need," the social worker would make sure the client understood that his or her personal funds would be used for the purchase. Then, the social worker would send in the form for issuance of a purchase order. Multi-Care did obtain written authorizations from its clients when it spent their money for personal items of their choosing. But these authorizations did not state that the social worker or someone else had explained Multi-Care's obligations and the clients' rights.
We cannot agree with DHH that it can sanction Multi-Care for failing to include on its client expense authorization form a written explanation of both Multi-Care's obligations and the client's rights in the absence of proof of clear violation of a law or of a properly promulgated rule or regulation. Agency rules and regulations are penal in nature and must be strictly construed. Insulation Technologies, Inc., 95-1184 at p. 9, 669 So.2d at 1350. The *678 burden is on DHH to prove violations of laws, rules or regulations. Insulation Technologies, Inc., 95-1184 at p. 6, 669 So.2d at 1348. Our law does not impose on Multi-Care an independent obligation to anticipate that its compliance with governing rules and regulations might fail to satisfy DHH's auditors and result in sanctions.
Accordingly, we conclude substantial rights of Multi-Care were prejudiced because the administrative findings, inferences, conclusions, or decisions are affected by error of law in that DHH impermissibly placed the burden of proof on Multi-Care. Upon thorough review of the record, we also conclude the trial court was not manifestly erroneous in finding as a fact that DHH failed to prove any violation of rules and regulations in force during the audit period.
Therefore, we find no merit in DHH's second assignment or error. Because we conclude the trial court was not manifestly erroneous in finding DHH failed to prove any violation of promulgated rules or regulations, we pretermit discussion of their third assignment of error.

CONCLUSION
From the record it appears Multi-Care has made every effort to cooperate with DHH rules and regulations, even implementing changes when proposed, rather than waiting for their official promulgation. Perhaps Multi-Care could have done a better job of documenting its handling of client funds, but there is no evidence in the record that it violated any promulgated rule or regulation. The record also shows that Multi-Care acted promptly in adopting DHH's suggested record keeping practices as soon as it knew they were proposed.
For reasons stated, we affirm the judgment of the trial court. Costs of the appeal in the amount of eight hundred sixty-five and 31/100 dollars ($865.31) are assessed to the Department of Health and Hospitals.
AFFIRMED.
FITZSIMMONS, J., concurs in the result, and assigns reasons.
FITZSIMMONS, Judge, concurring, with reasons.
The issue on administrative review was "`[w]hether the appellant ... violated the rules and regulations ... by improperly managing residents' personal accounts." Even assuming instances of inadequate written documentation under rules effective at the times in question, DHH failed to prove improper management of clients' accounts. For these reasons, I respectfully concur in the result.
NOTES
[1] Those cases saying this court owes no deference to the trial court's findings of fact on administrative review appear to be founded on two premises: 1) before the effective date of Acts 1997, No. 128, the trial court had no independent fact finding function; and 2) Donnell v. Gray, 215 La. 497, 41 So.2d 66 (1949) held the Supreme Court owed no deference to the factual findings of the appellate court. By analogy, the appellate court owes no deference to the trial court when it is exercising appellate jurisdiction on judicial review. We distinguish these holdings to the extent that where the trial court is exercising its function as a fact finder, we must give its factual determinations great deference. Virgil v. American Guarantee & Liability Ins. Co., 507 So.2d at 826.
[2] The ALJ cited the following violations:

"The Code of Federal Regulations, Title 42 Public Health, Section 483.440, (6)(iii) and the Louisiana Registry, Volume 9, Number 7, July 20, 1983, Section 3.21 and 3.22 mandates (sic) that the provider shall ensure that the residents are appropriately clothed and personal hygiene maintained. Moreover, the ICF/MR Standards of Payment, Sections VI, VII, and VIII outline the detailed responsibilities of the provider regarding residents' personal account funds. The appellant failed to document financial transactions and notification of rights which would have substantiated their defense that the residents chose to utilize their personal funds. Accordingly, the auditors properly cited violations pursuant to promulgated rules although in some instances cited the incorrect authority." We do not set out the referenced rules and regulations at length, but none of these require Multi-Care to maintain the suggested documentation.